# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| ROBERT BENCHOFF, | : | No. 43 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated July 13, |
| | : | 2017 at No. 110 MD 2017 |
| v. | : | |
| | : | |
| | : | |
| PA. DEPT. OF CORR., | : | |
| | : | |
| Appellee | : | |

## CONCURRING STATEMENT

**JUSTICE WECHT**                                                                                **FILED: June 1, 2018**

I join this Court's *per curiam* affirmance. Although I disagree with the Commonwealth Court's characterization of the right at issue in this case, I agree with the result.[1] The Commonwealth Court correctly concluded that it lacked original jurisdiction pursuant to the rule that we promulgated in *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998). That rule generally precludes judicial review of prison grievance decisions unless the matter involves a constitutional right not limited by the Department of Corrections ("DOC"). I write separately to express my concern that our decision in *Bronson* may not be consistent with statutory law or with the mandates of our Constitution.

---

[1] As Benchoff's petition for review in the nature of mandamus was dismissed pursuant to DOC's preliminary objections, our standard of review requires that we "regard as true all well-pleaded material facts set forth in the *mandamus* petition and all reasonable inferences that may be drawn from those facts." *Crozer Chester Med. Ctr. v. Dep't of Labor & Indus., Bureau of Workers' Comp., Health Care Servs. Review Div.*, 22 A.3d 189, 194 (Pa. 2011) (citing *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996)).

To the extent that this is true, *Bronson* denies inmates a judicial remedy for violations of their property rights.

Robert Benchoff disputes assessments to his inmate account for costs associated with medical treatment, contending that DOC charged him for four prescriptions when he received only two.[2] After failing to receive an explanation of the charges from the prison medical coordinator, Benchoff sought redress through DOC's inmate grievance system. *See* 37 Pa. Code § 93.9(a).[3] Benchoff filed a grievance seeking, *inter alia*, reimbursement of the charge and a hearing pursuant to the Administrative Agency Law. *See* 2 Pa.C.S. § 504 (requiring notice and an opportunity to be heard). DOC rejected the grievance upon the ground that Benchoff, in fact, had received four prescription medications. Throughout the administrative appeals process, DOC upheld its initial response.

---

[2] The General Assembly has authorized DOC to establish a program that includes medical copay fees. *See* 61 Pa.C.S. § 3303(a). DOC charges a copay for, *inter alia*, nonemergency medical services provided at the inmate's request and initial medication prescriptions. 37 Pa. Code § 93.12(c)(1), (3).

[3] Section 93.9, entitled "Inmate complaints," states as follows:

(a) The Department will maintain an inmate grievance system which will permit any inmate to seek review of problems which the inmate experiences during the course of confinement. The system will provide for review and resolution of inmate grievances at the most decentralized level possible. It will also provide for review of the initial decision making and for possible appeal to the Central Office of the Department. An inmate will not be disciplined for the good faith use of the grievance systems. However, an inmate who submits a grievance for review which is false, frivolous or malicious may be subject to appropriate disciplinary procedures. A frivolous grievance is one in which the allegations or the relief sought lack any arguable basis in fact as set forth in DC-ADM 804—Inmate Grievance System, which is disseminated to inmates.

(b) Inmates may also pursue available remedies in State and Federal court.

37 Pa. Code § 93.9.

Benchoff filed a *pro se* petition for review in the Commonwealth Court's original jurisdiction, seeking a writ of mandamus on the basis that he was entitled to a hearing to remedy the allegedly improper deductions from his inmate account. Benchoff asserted that, because the inmate grievance procedure did not meet the minimum standards established by the Administrative Agency Law, DOC violated his right to due process. DOC filed preliminary objections arguing that, pursuant to *Bronson*, the Commonwealth Court lacked original jurisdiction because Benchoff's claim did not involve a constitutional right that was not lawfully limited by DOC's regulations. DOC further asserted that medical copay grievances are not appealable to the Commonwealth Court.

The Commonwealth Court sustained the preliminary objections and dismissed Benchoff's petition. *See Benchoff v. Dep't of Corr.*, 110 M.D. 2017 (Pa. Cmwlth. July 13, 2017) (unpublished). Relying upon lower court decisions that applied *Bronson*,[4] the Commonwealth Court concluded that it lacked jurisdiction because Benchoff did not have a constitutional right to free medical services, and because DOC promulgated directives requiring medical copay fees. Slip Op. at 2. Although the Commonwealth Court correctly held that original jurisdiction did not lie because DOC directives limited the underlying right at issue, it is difficult to square the Commonwealth Court's characterization of Benchoff's claim with the facts of this case.

The court focused upon what it perceived to be a claim to free medical services, whereas the right at issue is a property interest in an inmate's money. However, Benchoff did not request free medical services, nor did he dispute the charges to his inmate account for the prescriptions that he received. Rather, Benchoff alleged a violation of due process only with respect to deductions for two medications that he claimed never to have

---

[4]    *See, e.g.*, *Portalatin v. Dep't of Corr.*, 979 A.2d 944 (Pa. Cmwlth. 2009); *Weaver v. Dep't of Corr.*, 829 A.2d 750 (Pa. Cmwlth. 2003).

received.  Brief for Benchoff at 11-12.  It is well-settled that a prisoner has a constitutional property interest in his inmate account, and that "inmates are entitled to due process with respect to any deprivation of this money."  *Buck v. Beard*, 879 A.2d 157, 160 (Pa. 2005); *see* PA. CONST. ART. I, § 1.  Nevertheless, pursuant to *Bronson*, original jurisdiction does not lie in the Commonwealth Court unless an inmate can identify a right not limited by DOC.  As the court aptly noted, DOC medical services regulations limit Benchoff's constitutionally protected property interest in his inmate account.  Thus, I am constrained to agree with the Commonwealth Court's determination that, under *Bronson*, it lacked original jurisdiction over Benchoff's claim.

This result is troubling.  This case echoes the concerns that I expressed in my dissenting statement in *Brown v. Wetzel*, 177 A.3d 200 (Pa. 2018) (Wecht, J., dissenting), in which I made the following observation:

> Although [*Bronson*] facially appears to deny inmates access to the courts for all manner of non-constitutional claims that may or may not be resolved adequately through the grievance process—including, ostensibly, those premised upon the violation of a statutory right—the regulatory preservation of an inmate's ability to "pursue available remedies" in state or federal court, 37 Pa.Code § 93.9(b), ensures that some meaningful judicial review of such claims may be obtained.

*Id.* at 210.  A grievance process that does not preserve some access to a court of record, however strictly circumscribed, not only is constitutionally inadequate, but also undermines traditional notions of fairness and justice.[5]  Notably, "the regulation

---

[5] In *Brown*, I explained:

> Absent any type of oversight from a neutral arbiter, which may provide unbiased consideration of potentially viable legal claims, may require the observance of fundamental procedural protections, and may fashion appropriate legal remedies, an internal dispute resolution process in which the same entity is both a litigant and the judge allows for the resolution of claims in a manner that elevates institutional priorities over the rights of a claimant. [*See* Van Swearingen, Comment, *Imprisoning Rights: The Failure*

promulgated by [DOC] enabling the internal grievance system specifically permits inmates to pursue any remedies available to them in state or federal forums." *McCray v. Dep't of Corr.*, 872 A.2d 1127, 1131 (Pa. 2005) (citing 37 Pa.Code § 93.9(b)). Thus, it is the explicit preservation of access to the courts in the regulation that "perhaps rescues this Court's holding in *Bronson* from resting upon what otherwise may be questionable constitutional footing." *Brown*, 177 A.3d at 210 (Wecht, J., dissenting). Nonetheless, despite this explicit reservation of a right of access to a state or federal court, neither our statutory nor decisional law provide a clear path to the vindication of that right.[6]

> *of Negotiated Governance in the Prison Inmate Grievance Process*, 96 CAL. L. REV. 1353, 1377-78 (2008)] (arguing that grievance processes can "alter the focus of the complaint process from one concerned primarily with the declaration of rights and wrongdoings to one focused on a prison's organizational goal of resolving disputes quickly and to its own advantage," potentially failing "to deter particular forms of constitutionally unlawful conduct within the prison walls" while simultaneously providing "a sense of legal legitimacy that may limit court-imposed liability").

177 A.3d at 210.

[6] At first blush, it may appear that that an inmate would be free to pursue his claim in a court of common pleas. The courts of common pleas' original jurisdiction statute states, in relevant part, as follows:

> *Except where exclusive original jurisdiction of an action or proceeding is by statute . . . vested in another court of this Commonwealth*, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

42 Pa.C.S. § 931(a) (emphasis added). However, the plain language of the Commonwealth Court's original jurisdiction statute belies that assumption. *See* 42 Pa.C.S. § 761 (stating that the Commonwealth Court has original jurisdiction of all civil claims against the Commonwealth government and providing that, subject to exceptions not applicable here, "[t]he jurisdiction of the Commonwealth Court . . . shall be *exclusive*") (emphasis added)). A simple hypothetical illustrates the problem arising from this conflict between the statutes. Suppose an inmate files his claim in a court of common pleas because he knows that, under *Bronson*, the Commonwealth Court lacks original jurisdiction over his constitutional claim. When the inmate's claim arrives upon the desk of a judge in the court of common pleas, the judge notes that DOC is the defendant in the

The *Bronson* Court provided no guidance as to how and when an inmate may pursue available remedies in state and federal court. *Bronson* does not address how a prisoner can argue a meritorious claim where, as here, the Commonwealth Court mischaracterized the nature of the claim, failed to consider Section 93.9, and concluded that it lacked jurisdiction. In fact, *Bronson* does not refer to Section 93.9's grievance procedure at all. Therefore, inmates must overcome two potentially insurmountable barriers in order to access the Commonwealth Court. An inmate first must state a constitutional claim. Next, even if an inmate establishes a protected interest, he must demonstrate that DOC does not limit that interest as a consequence of incarceration. As a practical matter, it is difficult to conceive of any personal or property interest that is *not* limited by DOC. Indeed, DOC has promulgated rules relating to nearly every facet of a prisoner's life, from property (DC-ADM 815) and collection of inmate debts (DC-ADM 005) to cable television (DC-ADM 002) and telephone calls (DC-ADM 818). Thus, in the absence of guidance as to the interplay between the regulatory framework of the inmate grievance process and its holding, the *Bronson* Court essentially gave the Commonwealth Court license to close its doors to virtually any incarcerated citizen seeking redress for a grievance involving constitutionally protected interests.

In addition to my practical concerns with *Bronson*, I also am not convinced that our holding is consistent with the statutory law of this Commonwealth. The plain language of the statute that provides for the Commonwealth Court's original jurisdiction states, in

case. Because the Commonwealth Court has exclusive jurisdiction of actions against DOC, the court of common pleas transfers the case to the Commonwealth Court, which then dismisses the inmate's claim pursuant to *Bronson*. The inmate essentially is faced with a "heads I win, tails you lose" scenario in which he is expelled from both state courts for lack of original jurisdiction. Thus, as a practical matter, the courts of this Commonwealth routinely may, indeed *must*, close their doors to inmates, regardless of how egregious the infringements upon their constitutional rights may be, provided that they do not fall within the narrow *Bronson* exception.

relevant part, that "[t]he Commonwealth Court shall have original jurisdiction of all civil actions or proceedings. . . [a]gainst the Commonwealth government, including any officer thereof." 42 Pa.C.S. § 761(a)(1). Critically, Section 761 does *not* state that the Commonwealth Court shall have original jurisdiction *only* where "an inmate can identify a personal or property interest . . . not limited by [DOC] regulations and which has been affected by a final decision of the department." *Bronson*, 721 A.2d at 359. It is well-settled that, "[i]n the absence of a clear legislative mandate, laws are not to be construed to decrease the jurisdiction of the courts." *Beneficial Consumer Disc. Co. v. Vukman*, 77 A.3d 547, 552 (Pa. 2013) (citing *Armstrong Sch. Dist. v. Armstrong Educ. Ass'n*, 595 A.2d 1139, 1144 (Pa. 1991)). When evaluating a statute, we "should not add, by interpretation, a requirement not included by the General Assembly." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016). Moreover, in drafting the statute, the General Assembly specified five situations in which the Commonwealth Court lacks original jurisdiction of civil actions against the Commonwealth government. *See* 42 Pa.C.S. § 761(a)(1).[7] None

---

[7] The Commonwealth Court lacks original jurisdiction to hear the following civil actions:

(i) actions or proceedings in the nature of applications for a writ of habeas corpus or post-conviction relief not ancillary to proceedings within the appellate jurisdiction of the court;

(ii) eminent domain proceedings;

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units);

(iv) actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act; and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

of these enumerated exceptions relate to DOC or to the inmate grievance system. If the legislature had intended to exclude inmate grievance issues implicating certain constitutional rights, it could have done so explicitly. *See Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002) ("[U]nder the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters.").

Finally, I discern no clear legal basis for the rule denying an inmate the right to challenge a final DOC decision without asserting a constitutional right wholly unlimited by DOC. In an opinion barely spanning three pages, the *Bronson* Court considered, *inter alia*, whether the Commonwealth Court has original jurisdiction over inmate appeals from decisions of the Central Office Review Committee (CORC).[8] Inmate Purcell Bronson sought appellate review of the CORC's decision denying him reimbursement for confiscated civilian clothing. The Commonwealth Court dismissed Bronson's petition for review, holding that it lacked jurisdiction. This Court affirmed, establishing a rule that effectively denies inmates access to the courts of this Commonwealth, as set forth by statute and DOC regulations, without conducting a meaningful review of the same.

The *Bronson* Court first observed that the "full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding." *Bronson*, 721 A.2d at 358-59 (quoting *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). The Court then noted that prisoners do not enjoy the same level of constitutional protections as other citizens. *Id.* at 359 (citing *Robson*, 420 A.2d at 13). However, those principles had little bearing upon the question

---

42 Pa.C.S. § 761(a)(1).

[8] A Chief Grievance Officer now performs all of the functions previously performed by the CORC, such as conducting the final review of an inmate's grievance appeal. DC-ADM 804-2, issued Apr. 27, 2015.

before the Court.  As I opined when evaluating *Bronson* in *Brown*, "[m]ere observation that the full 'panoply of rights' are not available to prisoners in all circumstances does not support a conclusion that a court may select at will the rights to be protected and those that are to be foregone."  *Brown*, 177 A.3d at 209.  Although incarceration necessarily entails limiting the constitutional rights of inmates, we nevertheless must honor those rights that are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration."  *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).

Nevertheless, the *Bronson* Court at least suggested otherwise.  Without reckoning with the preceding principles, and indeed without material explanation, we held:

> Unless "an inmate can identify a personal or property interest . . . not limited by [DOC] regulations and which has been affected by a final decision of the department[,]" the decision is not an adjudication subject to the court's review.  *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988).

*Bronson*, 721 A.2d at 359.  Citing to a non-precedential case in which the lower court provided no support for that assertion, this Court concluded that the Commonwealth Court lacked original jurisdiction on the basis that inmates do not have a constitutional right to civilian clothing and that DOC directives limit inmates' possession of personal property.

Given that the original jurisdiction statute does not include inmate grievance issues amongst its exceptions, given that the regulations governing the inmate grievance process provide expressly for the pursuit of legal remedies in the courts of our Commonwealth, given *Bronson*'s thin reasoning and lack of binding antecedent, and given the dubious effects of that case upon an inmate's ability to obtain judicial review of constitutional claims, I have serious misgivings as to whether the rationale underlying *Bronson* is sound.  Thus, while I join the Court's *per curiam* affirmance in the instant case, this Court should reconsider *Bronson* in a suitable case.