# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert Dantzler,                                :
                              Petitioner    :
                                                    :
          v.                                        :     No. 488 M.D. 2018
                                                    :     Submitted: June 5, 2019
John Wetzel, Zachary Moslak,         :
Barry Smith, F. Nunez,                    :
                              Respondents   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ROBERT SIMPSON, Judge (P)[1]
                   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE ELLEN CEISLER, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED:  September 19, 2019**


          Before this Court are the preliminary objections of John Wetzel, Secretary of the Pennsylvania Department of Corrections (DOC), Superintendent Barry R. Smith, State Correctional Institution (SCI)-Houtzdale (Superintendent Smith), Acting Chief Hearing Examiner Zachary Moslak (Moslak) and Hearing Examiner F. Nunez (Nunez) (collectively, Respondents) to a petition for review (Petition) filed by inmate Albert Dantzler (Dantzler).  Dantzler, representing himself, claims Respondents violated his state due process rights by punishing him for possessing a DOC-issued belt, which Respondents deemed to be contraband.

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

Upon review, we sustain Respondents' preliminary objections and dismiss the Petition, with prejudice.

## I. Background

Through his Petition, Dantzler set forth the following facts. While Dantzler was serving his sentence at SCI-Fayette, DOC issued him a belt. In December 2017, DOC transferred Dantzler to SCI-Houtzdale as a promotional transfer. The transfer was conditioned on Dantzler serving his first six months at SCI-Houtzdale without any infractions. Prior to the transfer, Dantzler's property was searched and deemed to be contraband-free. Dantzler's property was also inspected after his arrival at SCI-Houtzdale. Again, his property was found to be devoid of contraband.

Dantzler's cell at SCI-Houtzdale was searched twice in January 2018. Neither search yielded any contraband. At some point, DOC revised its policies regarding inmate clothing, causing Dantzler's belt to be deemed impermissible contraband. DOC did so without notifying Dantzler that its policies changed.

In April 2018, Corrections Officer D. Smith (Officer Smith) confronted Dantzler and informed him that he was not permitted to possess the belt. Officer Smith confiscated the belt and ordered Dantzler to return to his housing unit. Dantzler received a misconduct report for possession of contraband, the belt. As a result, he was called before his unit shift commander at SCI-Houtzdale for resolution of the matter. However, Dantzler elected to request a formal hearing through DOC's prisoner grievance system.

In May 2018, Nunez, a DOC hearing examiner, held a hearing. At the hearing, Dantzler pled not guilty, stating, "[w]hen [Officer Smith] gave me a receipt for [the belt], I told him I've had that belt since I transferred [to SCI-Houtzdale] ...." Pet. for Review, Ex. D. However, Nunez found Officer Smith's written report regarding the incident more credible than Dantzler's version of events, determining a preponderance of the evidence supported Officer Smith's claim that Dantzler possessed contraband. Thus, Nunez found Dantzler guilty, imposed a sanction of 30 days' cell restriction, and ordered the belt revoked as contraband. Dantzler appealed to DOC's Program Review Committee (PRC).

Through this appeal, Dantzler argued he was never informed that the DOC-issued belt was contraband and there was no preexisting documentation establishing it was impermissible for him to possess the belt. Additionally, Dantzler asserted Nunez should not have refused to admit evidence that Dantzler offered, nor "relied solely on the word of [Officer Smith]." Pet. for Review, Ex. E. Dantzler argued Nunez could not have properly found him "guilty of possession of contraband for an item that was issued to [him] by [DOC], especially when there is no documentation stating that the item [is] no longer permissible for [him] to retain prior to the [misconduct] in question." Id.

The PRC upheld Nunez's decision, concluding Nunez "adequately document[ed]" his findings in a manner that was "sufficient to support the decision[,]" and "no violations of law, [DOC] directive[s], or regulation[s]" occurred. Pet. for Review, Ex. F. The PRC observed Nunez had authority to impose various sanctions, including up to 90 days' disciplinary custody for each misconduct

3

charge for which an inmate is found guilty or pleads guilty. However, Nunez elected to impose a more lenient sanction, which the PRC found was "proportionate to the indicated offense." Id.

Dantzler appealed the PRC's decision to Superintendent Smith, who denied the appeal, stating Dantzler's claim pertaining to lack of notice "has no relevance to this appeal. … The facts of the incident remain that you were in possession of an item deemed contraband by policy. You are responsible for any and all items in your possession." Pet. for Review, Ex. H. Superintendent Smith determined Dantzler was properly charged with, and punished for, possession of contraband, finding no error with the manner in which Nunez or the PRC disposed of the matter.

Thereafter, Dantzler filed his final administrative appeal from Superintendent Smith's decision to Moslak, reiterating his previously raised arguments. Moslak denied Dantzler's appeal.

In July 2018, Dantzler filed his Petition with this Court, claiming Respondents' actions violated his due process rights under Article I, Section 25 of the Pennsylvania Constitution.[2] On that basis, Dantzler seeks: (1) a declaratory judgment that Respondents violated his rights; (2) expungement of his misconduct citation or, alternatively, a disciplinary hearing that complies with DOC regulations and procedures; (3) compensation from DOC for the days he was removed from his

---

[2] Article I, Section 25 of the Pennsylvania Constitution, titled "Reservation of powers in people," states: "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate." PA. CONST. art. I, §25.

4

work assignment because of the misconduct at issue; and (4) compensation from DOC for costs he incurred as a result of pursuing this action. Dantzler raises no claims based on federal law.

Respondents filed preliminary objections to the Petition, asserting this Court should dismiss the Petition. First, according to Respondents, this Court cannot exercise appellate jurisdiction to the extent Dantzler seeks to challenge prior misconduct procedures. Additionally, Respondents argue, this Court cannot exercise original jurisdiction as Dantzler did not show he possessed a legally cognizable liberty interest and, as a result, he was not entitled to due process at the misconduct hearing.[3]

## II. Discussion
## A. Appellate Jurisdiction

Initially, we agree with Respondents that this Court lacks jurisdiction, in our appellate capacity, to consider Dantzler's Petition. Specifically, "[i]nmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review." Hill v. Dep't of Corr., 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013). Thus, to the extent Dantzler seeks appellate review of DOC's misconduct proceedings and his conviction for possession of contraband, we sustain Respondents' demurrer. Id.

---

[3] In ruling on preliminary objections, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. Key v. Pa. Dep't of Corr., 185 A.3d 421 (Pa. Cmwlth. 2018). However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. Id. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Id. Any doubt must be resolved in favor of the non-moving party. Id.

5

## B. Original Jurisdiction

Further, as to the viability of Dantzler's suit in this Court's original jurisdiction, DOC's decisions regarding inmate misconducts generally fall outside the scope of our original jurisdiction. Hill. This holds true even where a prisoner's constitutional rights were allegedly violated because "[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." Bronson v. Cent. Office Review Comm., 721 A.2d 357, 359 (Pa. 1998). Indeed, "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Robson v. Biester, 420 A.2d 9, 13 (Pa. Cmwlth. 1980).

Nevertheless, "[t]here is a narrow exception if an inmate can identify a personal or property interest not limited by [DOC] regulations and affected by a final [DOC] decision. … If one of these interests is involved, the inmate is entitled to notice and an opportunity to be heard." Hill, 64 A.3d at 1167 (citation omitted). Here, Dantzler does not have a personal or property interest not limited by DOC regulations and affected by a final DOC decision.

To that end, DOC Policy DC-ADM 801 (Policy), upon which Dantzler relies here, states, as pertinent: "This policy does not create any rights in any person nor should it be interpreted or applied in such a manner to abridge the rights of any individual." DC-ADM 801(VI) ("Rights under this Policy").[4] This Court previously held that identical, "disclaimer" language in another DOC policy was "sufficient to

---

[4] DOC Policy DC-ADM 801 can be found at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf (last visited July 8, 2019).

dispel any reasonable expectation that an enforceable right [was] created by the DOC policy." Weaver v. Dep't of Corr., 829 A.2d 750, 753 (Pa. Cmwlth. 2003).

In so doing, the Weaver Court discussed Sandin v. Conner, 515 U.S. 472 (1995), in which the U.S. Supreme Court considered whether liberty interests were created by prison regulations relating to disciplinary confinement. The U.S. Supreme Court in Sandin determined a state-created liberty interest could arise only when a prison's action imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. The Court went on to point out that the punishment of incarcerated prisoners serves the aim of effectuating prison management and prisoner rehabilitative goals and that discipline by prison officials in response to misconduct is within the expected parameters of the prisoner's sentence. The Court found the prisoner's placement in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

Here, as in Sandin, DOC's sanctions for Dantzler's misconduct, imposition of a 30-day cell restriction and confiscation of Dantzler's DOC-issued belt, do not impose atypical and significant hardships in relation to the ordinary incidents of prison life.[5] Thus, Dantzler cannot state a cause of action based on an

---

[5] Dantzler's averments regarding sanctions are found in Paragraph 48 of his Petition for Review, which states:

Due to [Respondents'] actions or inactions [Dantzler] has been removed from all work assignments. Been forced to complete the entire Disciplinary Sanction. Been removed from all activities and Programs. In addition, [Dantzler] has violated the

7

alleged violation of DC-ADM 801. Id. Indeed, in discussing Sandin, this Court previously stated:

> Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' [Sandin, 515 U.S. at 484]. Lesser restraints on a prisoner's freedom are deemed to fall 'within the expected perimeters of the sentence imposed by a court of law.' Id. If a prisoner had no protected liberty interest in remaining free of disciplinary custody, then the state owes him no process before placing him in disciplinary confinement. In Sandin, the Supreme Court held that 30 days of disciplinary segregation for resisting a strip search did not implicate a liberty interest because 'disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody' in that 'conditions at [the prison] involve[d] significant amounts of 'lockdown time' even for inmates in the general population.' [Id. at 486].

Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003) (emphasis added); see also Horan v. Newingham (Pa. Cmwlth., No. 2622 C.D. 2015, filed October 24, 2016), slip op. at 12, 2016 WL 6156221, at *6 (unreported) ("Pursuant to Sandin and Brown, Horan's discipline of [30] days of cell restriction did not impose an atypical and significant hardship sufficient to create a liberty interest deserving of the protections of procedural due process under the constitution.").

---

terms of his Parole, and is at risk of losing his Promotional transfer, which could cause [Dantzler] to be placed back into a Behavior modification unit unjustly.

Pet. for Review, ¶48 at 4. Especially with regard to the last sentence, the Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinions. Key.

8

In addition, "[a] prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protection." Orozco v. Pa. Dep't of Corr. (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014), slip op. at 4-5, 2014 WL 117475, at *2 (unreported) (citing Olim v. Wakinekona, 461 U.S. 238 (1983); Weaver; Bullock v. Horn, 720 A.2d 1079 (Pa. Cmwlth. 1998)) (emphasis added); see also Shore v. Dep't of Corr., 168 A.3d 374 (Pa. Cmwlth. 2017). Thus, a failure to comply with prison policy is not a basis for a cause of action. Paluch v. Dep't of Corr., 175 A.3d 433 (Pa. Cmwlth. 2017); Shore; Tindell v. Dep't of Corr., 87 A.3d 1029 (Pa. Cmwlth. 2014); Yount v. Dep't of Corr., 886 A.2d 1163 (Pa. Cmwlth. 2005); Weaver; Bullock; Africa v. Horn, 701 A.2d 273 (Pa. Cmwlth. 1997). As such, Dantzler cannot base his cause of action on Respondents' alleged failure to comply with DOC policy.

Moreover, our courts observe that inmates "do not have the right to possess civilian clothing[,]" Bronson, 721 A.2d at 359, nor are they "entitled to the clothing of [their] choice in prison." Bullock, 720 A.2d at 1082.

Further, although Dantzler relies on DOC regulation 37 Pa. Code §93.10 (relating to inmate discipline), "[m]andatory language in a state regulation … is no longer the sole criterion for finding the creation of a liberty interest." Luckett v. Blaine, 850 A.2d 811, 820 (Pa. Cmwlth. 2004) (citing Sandin). "Therefore, any lack of adherence to … 37 Pa. Code § 93.10 cannot form the basis of a due process

claim." Curtis v. Canino (Pa. Cmwlth., No. 160 M.D. 2015, filed March 6, 2017), slip op. at *5, 2017 WL 877319, at *2 (unreported).[6]

Consequently, Dantzler cannot state a cause of action in this Court's original jurisdiction. Because Dantzler cannot state a cause of action in this Court's original or appellate jurisdiction, we sustain DOC's preliminary objections, and we dismiss the Petition, with prejudice.

_____
ROBERT SIMPSON, Judge

Judge Brobson concurs in result only.

---

[6] Further, Bush v. Veach, 1 A.3d 981 (Pa. Cmwlth. 2010), relied on by Dantzler, is distinguishable. There, an inmate was removed from his job in the prison's kitchen when he was caught taking unauthorized food. This Court concluded the inmate could not state a due process claim against prison employees because he did not have a property right in his prison job. However, a divided panel of this Court concluded the inmate sufficiently alleged a cause of action for a violation of his rights established by DOC regulations. Specifically, the process for removing the petitioner from his job was set forth in 37 Pa. Code §93.10. Section 93.10(a)(2)(v) states that an inmate found guilty of certain misconduct may be removed from his job. 37 Pa. Code §93.10(a)(2)(v). However, the regulation provides procedures for imposing such discipline, including written notice of the charges, a hearing, and an opportunity for the inmate to tell his story and to present evidence. 37 Pa. Code §93.10(b)(1)-(3). Ultimately, this Court held that, because the inmate received neither written notice nor any of the other procedures outlined in the regulation, he stated a cause of action for violation of the regulatory disciplinary process.

Aside from the obvious factual distinction that Bush involved an inmate's permanent removal from a prison job and this case does not, the continuing vitality of Bush and the cases that rely upon it is unclear in light of the fact that it conflicts with other authority discussed above, and it did not address the impact of the U.S. Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). Additionally, although in his Petition Dantzler generally alleges he was denied the opportunity to present evidence at the hearing before Nunez, he offers no specific explanation as to what evidence he was precluded from presenting.

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert Dantzler,                  :
             Petitioner      :
                         :
        v.                  :     No. 488 M.D. 2018
                         :
John Wetzel, Zachary Moslak,    :
Barry Smith, F. Nunez,         :
           Respondents   :

## **O R D E R**

**AND NOW**, this 19th day of September 2019, the preliminary objections filed by Respondents John Wetzel, Zachary Moslak, Barry Smith, and F. Nunez are **SUSTAINED**, and Petitioner Albert Dantzler's Petition for Review is **DISMISSED**, with prejudice.

 

 

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert Dantzler, :
                      Petitioner :
                     :
               v. : No. 488 M.D. 2018
                     : Submitted: June 5, 2019
John Wetzel, Zachary Moslak, :
Barry Smith, F. Nunez, :
              Respondents :

BEFORE:    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                    **HONORABLE ROBERT SIMPSON,** Judge (P.)
                    **HONORABLE P. KEVIN BROBSON,** Judge
                    **HONORABLE ANNE E. COVEY,** Judge
                    **HONORABLE MICHAEL H. WOJCIK,** Judge
                    **HONORABLE ELLEN CEISLER,** Judge

**CONCURRING OPINION BY**
**JUDGE COHN JUBELIRER**                  **FILED: September 19, 2019**

Respectfully, I concur in the result reached by the Majority because of my belief that, pursuant to precedent established by the Pennsylvania Supreme Court, this Court has neither appellate nor original jurisdiction to consider Albert Dantzler's Petition for Review. I write separately because in the absence of that precedent, I would embrace the position so eloquently articulated in the Concurring and Dissenting Opinion.

I am not convinced here that Albert Dantzler articulated the violation of a specific constitutional right, not limited by the Department of Corrections (DOC) as a result of incarceration, as required by *Bronson v. Central Office Review Committee*, 721 A.2d 357, 359 (Pa. 1998). The result of *Bronson*, as Justice Wecht

has observed, allows DOC to police its own grievance system without review. *See Benchoff v. Dep't of Corr.*, 185 A.3d 979 (Pa. 2018) (Wecht, J., concurring); *Brown v. Wetzel*, 177 A.3d 200, 210 (Pa. 2018) (Wecht, J., dissenting). I join with the Concurring and Dissenting Opinion in sharing Justice Wecht's concern that "[a] grievance process that does not preserve some access to a court of record, however strictly circumscribed, not only is constitutionally inadequate, but also undermines traditional notions of fairness and justice," *Benchoff*, 185 A.3d at 981. As a matter of fundamental fairness and justice, petitioning inmates should have some limited opportunity to seek redress from a court of record, from decisions issued in DOC's grievance system, at least under the circumstances in the case before us where the inmate alleges he was punished for possessing a belt that DOC itself issued to him after DOC, without notice to him, later classified it as contraband.

While I believe the limits of the rule created in *Bronson* should be reexamined, until the Supreme Court does so, I recognize we are bound by its constraints. I must, therefore, reluctantly concur with the result reached by the Majority.

 

 

                                       _____

                                       **RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Albert Dantzler,                        :
                        Petitioner      :
                                        :
        v.                              :   No. 488 M.D. 2018
                                        :   SUBMITTED:  June 5, 2019
John Wetzel, Zachary Moslak,            :
Barry Smith, F. Nunez,                  :
                        Respondents     :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge (P)
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


CONCURRING AND DISSENTING
OPINION BY JUDGE CEISLER                    FILED:  September 19, 2019

        While I concur with the majority's conclusion that we are compelled by

precedent to find that we do not have appellate jurisdiction over Petitioner Albert

Dantzler's (Petitioner) Petition for Review, I respectfully, albeit vigorously, dissent

from the majority's determination that we may not consider Petitioner's claims via

original jurisdiction.

        It is well settled that the Department of Corrections' (Department) decisions

regarding inmate misconduct convictions generally fall outside the scope of our

original jurisdiction. *Id.*  This holds true even where a prisoner's constitutional rights

have allegedly been violated, as "[p]rison inmates do not enjoy the same level of

constitutional protections afforded to non-incarcerated citizens." *Bronson v. Cent.*

*Office Review Comm.*, 721 A.2d 357, 359 (Pa. 1998). Indeed, as we have noted in the past, "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Robson v. Biester*, 420 A.2d 9, 13 (Pa. Cmwlth. 1980).

Even so, "[t]here is a narrow exception if an inmate can identify a personal or property interest not limited by [Department] regulations and affected by a final [Department] decision. . . . If one of these interests is involved, the inmate is entitled to notice and an opportunity to be heard." *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013) (citation omitted); *see Lawson v. Dep't of Corr.*, 539 A.2d 69, 71 (Pa. Cmwlth. 1988) ("It is clear then that where an inmate files an action in our original jurisdiction seeking review of Department action, our inquiry must be limited to a determination of whether a constitutional or statutory violation has occurred.").

> Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 [. . .] (1995). Lesser restraints on a prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." *Id.*

*Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003).[1] "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies[.]" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. *The*

---

[1] The due process rights protected by the Pennsylvania Constitution and the United States Constitution are "substantially coextensive." *Stone & Edwards Ins. Agency, Inc. v. Dep't of Ins.*, 636 A.2d 293, 297 (Pa. Cmwlth.), *aff'd* 648 A.2d 304 (Pa. 1994); *accord R. v. Dep't of Public Welfare*, 636 A.2d 142, 152-153 (Pa. 1993).

*touchstone of due process is protection of the individual against arbitrary action of government*[.]" *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (emphasis added).

Here, Petitioner has claimed that the *Department* issued the belt to him, and allowed him to possess and wear it for an extended period of time while he was confined in at least two separate State Correctional Institutions. Petition for Review, ¶¶8-12. The Department subsequently changed the rules without informing him that his belt was now deemed contraband, *in violation of its own policy proclamations*. *Id.*, ¶¶ 13, 21-22, 24; *see* Department Policy 1.1.1(3); DC-ADM 801(III); 37 Pa. Code § 93.10(a) ("Rules which define expectations and prohibitions for inmate behavior will be established by the Department and disseminated to the inmate population."). It then punished him for having this Department-issued belt. Petition for Review, ¶¶14-20, 23, 25-48. This Kafkaesque sequence of events caused Petitioner, as described in his Petition for Review, "to be removed from all eligible work assignments[,] . . . activities[,] and programs. In addition, [this misconduct means that] Petitioner has violated the terms of his parole[,putting him] at risk of losing his promotional transfer, which could cause Petitioner to be placed back in a behavior modification unit unjustly."[2] *Id.* at ¶48.

I recognize that "[p]rison officials must be accorded great deference regarding the adoption and execution of policies and practices that in their judgment are necessary to preserve internal order and maintain institutional security." *Bullock v. Horn*, 720 A.2d 1079, 1082 (Pa. Cmwlth. 1998). Nor do I dispute that inmates "[do not] have the right to possess civilian clothing[,]" *Bronson*, 721 A.2d at 359, "[and

---

[2] It is not exactly clear what Petitioner means by "parole," since that term is generally understood as meaning: "The conditional release of a prisoner from imprisonment before the full sentence has been served." PAROLE, Black's Law Dictionary 1292 (10th ed. 2014). In context, however, I believe Petitioner is using "parole" to describe his transfer to a less-restrictive, more-desirable carceral environment.

are not] entitled to the clothing of [their] choice in prison." *Bullock*, 720 A.2d at 1082. Even so, the Department cannot simply alter the rules without notice and then punish unwittingly noncompliant prisoners without running afoul of constitutionally protected due process rights. While, as the majority recognizes, "[a]dministrative regulations or policies do not create rights in inmates[,]" *id.* at 1082 n.6,[3] a concept as critical as giving proper, advance notice of what is permitted (and, as a corollary, what is *not* permitted), does not spring forth solely from the Department's regulations or policies, but is rather *an elemental, foundational component of justice*, one which cannot merely be disclaimed away by the Department. *Cf. Brown*, 833 A.2d at 1171-72 (inmate stated viable challenge against Department's misconduct rulings by arguing that the Department had retaliated against him for filing grievances, in violation of inmate's rights under the First Amendment of the United States Constitution).

Furthermore, I believe that the majority's narrow focus on the Department's imposition of 30 days' worth of cell restriction upon Petitioner, and confiscation of his belt, misses the broader, more important problem: regardless of the severity or type of sanction the Department elected to impose upon Petitioner, it remains that these punishments were imposed on a basis that was *fundamentally unfair*. Thus, under the circumstances, I believe the Department's assertion that "[Petitioner] was not entitled to due process[,]" Br. in Support of Preliminary Objections at 9, is a troubling repudiation of the rule of law. The majority's decision essentially gives the Department license to operate as a Star Chamber of sorts, secure in the knowledge

---

[3] *But see Williams v. Wetzel*, 178 A.3d 920, 924 (Pa. Cmwlth. 2018) (inmate stated legally cognizable due process claim by averring Department made misconduct determination despite failing to adhere to procedural standards set forth in Department regulations); *accord Com. ex rel. Jackson v. Wetzel*, (Pa. Cmwlth., No. 47 M.D. 2017, filed June 13, 2018), slip op. at 4-7, 2018 WL 2944946 at *2-*3; *Horan v. Newingham*, (Pa. Cmwlth., No. 2622 C.D. 2015, filed Oct. 24, 2016), slip op. at 13-14, 2016 WL 6156221 at *7; *Bush v. Veach*, 1 A.3d 981, 984 (Pa. Cmwlth. 2010).

that its handling of misconduct matters is effectively immune from judicial review, no matter how capriciously it chooses to alter or promulgate its internal regulations, or punish those members of our society over which it maintains custodial control. *See Benchoff v. Pa. Dep't of Corr.*, 185 A.3d 979, 981 (Pa. 2018) (Wecht, J., concurring) ("A grievance process that does not preserve some access to a court of record, however strictly circumscribed, not only is constitutionally inadequate, but also undermines traditional notions of fairness and justice.").

Consequently, I would find that Petitioner has articulated, at least at the preliminary objections stage, a scenario in which the Department has allegedly deprived him of a "legally cognizable liberty interest[,]" *Brown*, 833 A.2d at 1172, by arbitrarily punishing him, without sufficient advance notice that his belt was no longer a Department-permitted article of clothing. Furthermore, I would hold that Petitioner has sufficiently pled facts establishing that the Department placed upon him an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life[,]" *Sandin*, 515 U.S. at 484, by virtue of the aforementioned sanctions visited upon him as a result of this arbitrary, notice-deficient sequence of events, such that his due process rights are implicated.

Accordingly, I would conclude that we have original jurisdiction over Petitioner's Petition for Review, to the extent that he argues the lack of prior notice regarding his Department-issued belt's reclassification as contraband led to violations of his due process rights under the Pennsylvania Constitution, and would overrule Respondents' demurrer regarding our original jurisdiction in this matter.

Therefore, I dissent to the extent the majority concludes we do not have original jurisdiction over Petitioner's Petition for Review.

_____
ELLEN CEISLER, Judge

President Judge Leavitt joins in this concurring and dissenting opinion.