IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell W. Robertson,                    :
                    Petitioner           :
                                         :   No. 525 M.D. 2020
            v.                           :
                                         :   Submitted: March 26, 2021
PA. Dept. of Corrections,                :
                    Respondent           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  December 29, 2021


        Russell W. Robertson (Robertson) filed a petition for review (PFR) on September 9, 2020, in this Court's appellate jurisdiction seeking review of an internal prison disciplinary misconduct brought against him by the Pennsylvania Department of Corrections (DOC) as a result of the alleged violation of numerous internal prison policies.  On September 24, 2020, this Court filed an order construing his PFR as one addressed to this Court's original jurisdiction.  We review Robertson's PFR accordingly.

        In this case, Robertson, an inmate confined in the State Correctional Institution (SCI) Fayette, was charged and found guilty by the DOC of misconduct related to alleged drug use in prison.  This finding of guilt caused Robertson to lose parole he was supposed to have been granted on the condition that he received no

misconducts prior to his release. The questions we are asked to resolve are whether this Court has jurisdiction to review the finding of guilt stemming from a prison misconduct; whether Robertson has a liberty interest in his parole; and whether Robertson has a liberty interest stemming from his confinement in restricted housing.

The PFR alleges the following. Robertson was granted parole on or after January 2, 2020, on the condition that he receive no misconducts prior to his release. (PFR ¶1, PFR Exhibit 1A.) On January 8, 2020, medical and security staff discovered Robertson in a state of bodily distress in his cell. (PFR ¶2.) Robertson denied smoking or ingesting any drugs and explained that he was ill from smoke that his cellmate produced while manufacturing makeshift tattoo supplies. (PFR ¶4.) He was transported to a local emergency room where he presented with a low heartrate (46 beats per minute), a low pulse oxygen level, tremors, and physical weakness. (PFR ¶2.) Blood and urine samples were collected at the hospital, and all tests returned negative for the presence of drugs; specifically, no cannabinoids were identified. (PFR ¶¶5-6.) However, an inspection of Robertson's cell revealed the presence of synthetic cannabis/marijuana, known as K-2, in the common areas, specifically in and around his cellmate's possessions. (PFR ¶7.) Upon discovery of this illicit substance, a "Narc II 23A/23B" (Narcotics Test) was conducted on the substance, which was positively identified as K-2. (PFR ¶8.) After he was returned from the hospital, Robertson was placed in an observation cell, and was remanded to the restricted housing unit (RHU), for 14 days, without a hearing. (PFR ¶9.) Robertson maintains that during this entire 14-day period, he was unaware of the reason for his confinement in the RHU. (PFR ¶10.)

On January 15, 2020, Robertson was informed that the SCI Parole Office would be notifying the Pennsylvania Parole Board (Board) that he received a drug-

2

related misconduct. (PFR ¶10.) Robertson wrote to the supervising lieutenant and the "major of the guard," both of whom informed him that he received a misconduct.[1] (PFR ¶11.) On January 24, 2020, the misconduct was dismissed without prejudice due to a procedural error, and on January 27, 2020, the misconduct was rewritten, charging him with "#36-possession; #22-possession 'or' use of contraband; [and] #50-smoking."[2] (PFR ¶¶12-13.) On January 30, 2020, 22 days after the misconduct occurred, a hearing was held, and the hearing examiner asked for a continuance for further investigation, which Robertson accepted.[3] (PFR ¶¶14-15.) Thirteen days later, without a final or complete hearing, Robertson received notice that he was guilty of possessing or using contraband, and smoking where prohibited, and that his charge of possession was dismissed. (PFR ¶16.) He was given time served for the possession

---

[1] Attached to the PFR as exhibits are inmate requests to staff members that Robertson sent to these individuals. (PFR Exhibits 3A-3F.) However, large parts of these exhibits are illegible and impossible to decipher in full context.

[2] Exhibit 3G to the PFR, which contains a misconduct report, indicates that Robertson was charged with a class I misconduct for "#22 possession or use of a dangerous or controlled substance," a class I misconduct for "#36 possession of contraband," and a class II misconduct for "#50 smoking where prohibited." (PFR Exhibit 3G.) Contrary to Robertson's version of events, the exhibit also indicates that on January 8, 2020, DOC staff responded to Robertson's cell due to a medical emergency, and found Robertson lying on the floor. *Id.* When Robertson was asked what happened he stated to an officer that he "smoked a couple of sticks of K-2, then [he] fell over and tried to throw up." *Id.* Under a table behind Robertson, a corrections officer found a homemade rolled cigarette filled with K-2 that was burnt on one end. *Id.* DOC staff also found another stick of what was suspected to be K-2, and a smoked cigarette which contained K-2. *Id.* DOC staff interviewed Robertson's cellmate who stated that he and Robertson both had been smoking K-2, and that Robertson fell over after taking several hits. *Id.* DOC staff tested the contraband using the Narcotics Test kit, which was positive for synthetic marijuana (K-2).

[3] Robertson argues that pursuant to the DOC policy manual, misconducts must be given to the inmate on the date that they are written, and that informal misconduct charges, such as smoking, shall result in a meeting being held within 7 working days, and that formal charges, such as possession or use of contraband, shall result in a hearing within 24 hours and no more than 7 working days. (PFR ¶14.)

3

and/or use of contraband charge and was given a verbal warning for the smoking charge. *Id.* The hearing examiner found the corrections officer's statement credible that Robertson admitted to smoking "a couple [of] sticks of (K-2)" and then fell ill and tried to vomit. (PFR ¶18.) Exhibit 4A to the PFR contains a hearing report indicating that the hearing occurred on January 30, 2020, and was continued for the hearing examiner to obtain more information. (PFR Exhibit 4A.) The exhibit shows that the hearing resumed on February 12, 2020. *Id.* According to the hearing report, the hearing examiner believed the corrections officer over Robertson and accepted the Narcotics Test as evidence of wrongdoing. *Id.*

Robertson appealed the misconduct to the Program Review Committee (PRC), arguing that the Narcotics Test and the statement of the corrections officer were insufficient to prove his guilt. (PFR ¶¶18-19.) The PRC denied his appeal on February 21, 2020. (PFR Exhibit 5B.) Robertson was unable to present the test results from the hospital, which showed that his blood and urine were negative for the presence of drugs. (PFR ¶¶19-21.) Robertson attempted to make his medical records available to appropriate DOC personnel by filing a release form dated March 18, 2020; however, he maintains that the PRC disregarded this effort and would not review the drug tests. (PFR ¶¶20-21.) According to Robertson, the PRC erred in relying on the Narcotics Test rather than the blood and urine tests that were conducted at the hospital. (PFR ¶21.) He appealed to the superintendent who disregarded Robertson's evidence and relied on the same information as the hearing examiner and the PRC. (PFR ¶22, Exhibit 6A.) Robertson argues that, contrary to the corrections officer's report, he did not tell the corrections officer that he smoked K-2, rather, he told him that his cellmate was creating a coloring substance used in the production of unauthorized tattoos and that

4

his cellmate was caught doing the same.[4]  (PFR ¶¶23-24.)  In fact, Robertson's cellmate was found guilty of possession or use of contraband, smoking where prohibited, and other charges related to the production of tattoos.  (PFR ¶28.)  On March 13, 2020, the Board refused Robertson's parole.  (PFR Exhibit 9.)

Based on the foregoing, Robertson argues that the use of the Narcotics Test, which identified the contraband found in his cell as K-2, was insufficient to sustain the misconduct and that prison officials erred in failing to consider his negative blood and urine tests collected at the hospital.  (PFR ¶¶A-D.)  Robertson asks us to examine his possession or use of contraband charge, and his smoking charge, and to find that he could not be guilty of either.  (PFR ¶¶E-F.)  He asks for an order requiring DOC to remove the misconduct from his record, to notify the Board that the misconduct was erroneous, and to reinstate his parole.  (PFR ¶F.)  Robertson avers that DOC violated its own policies with respect to misconducts and hearing procedures, and thus, violated his right to due process.  (PFR ¶G.)  He argues that DOC ignored its own appeals process by withholding exonerating evidence, which violated his rights under the United States and Pennsylvania Constitutions.  *Id*.  Finally, he argues that DOC violated its own policy by placing him in restricted housing without prior notification or a hearing.  (PFR ¶H.)

On October 19, 2020, DOC filed preliminary objections (POs) to the PFR.  In its brief in support of its POs, DOC frames the issues before this Court as whether the PFR should be dismissed for a lack of jurisdiction because this Court does not have jurisdiction over internal prison proceedings, and whether Robertson failed to state a due process claim because he does not have a liberty interest in unexecuted parole.

---

[4] In support of this argument, Robertson attached an inmate response form in response to the misconduct where he generally reiterates the aforementioned arguments.  (PFR Exhibit 6B.)

With respect to jurisdiction, DOC argues that prison officials must be allowed to exercise their judgment in the execution of internal prison policies and that inmates do not enjoy the same constitutional protections as non-incarcerated citizens. DOC maintains that to the extent Robertson seeks appellate review of past misconduct, we must dismiss these claims for lack of jurisdiction. Moreover, it argues that unless Robertson identifies a constitutional right not limited by DOC, we do not have original jurisdiction over his claims involving internal prison disciplinary matters.

As to the due process claim, DOC argues that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his maximum term of his sentence, and that parole decisions themselves do not implicate a constitutionally protected liberty interest. Specifically, DOC argues that the grant of parole does not vest an inmate with any liberty interest, and that an inmate only has a due process protection in his status as a parolee when the order granting parole is executed and the prisoner is released from confinement or constructively paroled. It avers that an order granting parole is only executed when an order granting the inmate's release exists and the prisoner signs an acknowledgement of the conditions of his parole. Here, DOC argues that Robertson has not alleged that he had an executed release order, or that he ever signed the required acknowledgement of his parole conditions.

In response, Robertson frames the question as whether his petition for review adequately challenges the finding of guilt related to his misconduct arising from the violation of prison policy. In the statement of the case portion of his brief, Robertson candidly maintains that "yes, this is a challenge to a [sic] internal prison disciplinary proceeding," and that he is an inmate in the custody of DOC. (Robertson's

6

Br. at G.)[5] He asks this Court to "decide a misconduct, unfairly processed, that eventually resulted in a loss of []parole." *Id.* He argues that he is "solely concerned with the adjudication of the misconduct and not the resultant rescinding of the release order on [March 13, 2020]." *Id.*

He argues that the charges of possession and use of contraband cannot be supported without a urinalysis report, and that it was erroneous for DOC to physically test the substance in his cell that was identified as K-2. He maintains that it was the duty of the hearing examiner to act as factfinder, and the hearing examiner failed to do so when he failed to hear his exculpatory evidence. He argues that DOC was legally required to hear this evidence and to allow him to produce the same. Robertson avers that the failure to hear this evidence violated his rights under the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV.

As to the lack of jurisdiction argument presented by DOC, Robertson maintains that unless he can "identify a constitutional right limited by [DOC]," he cannot establish jurisdiction. (Robertson's Br. at H.) However, he argues that he has shown 17 policy violations by DOC which violate his Fourteenth Amendment right to due process and that, therefore, this Court has original jurisdiction pursuant to 42 Pa.C.S. §761 and Pennsylvania Rule of Appellate Procedure 1502, Pa.R.A.P. 1502, and appellate jurisdiction pursuant to 42 Pa.C.S. §763 and Pennsylvania Rule of Appellate Procedure 1512(a)(1), Pa.R.A.P. 1512(a)(1), and thus, this Court can freely decide the validity of his misconducts for possession or use of contraband and smoking where prohibited.

---

[5] Instead of using page numbers, Robertson has elected to identify the pages in his brief in alphabetical order. Pennsylvania Rule of Appellate Procedure 2173 requires that "the pages of briefs . . . shall be numbered separately in Arabic figures . . . ." Pa.R.A.P. 2173. To avoid any confusion as to the contents of the record that this Court is referencing, we have identified Robertson's pages according to his "numbering" scheme.

In terms of a liberty interest held by Robertson, he argues that he has a statutory interest in release on parole, because he is entitled to parole where the Board decides he can be released without detriment to himself or the community. Next, he argues that, under *Sandin v. Conner*, 515 U.S. 472 (1985), he satisfied the requirements to establish a liberty interest. Under the first factor of the *Sandin* test, whether the right at issue is independently protected by the Constitution, Robertson argues that procedural due process is protected by the Fourteenth Amendment. As to the second *Sandin* factor, whether the challenged action causes the prisoner to spend more time in prison, Robertson argues that the erroneous report of misconduct resulted in the rescinded privilege of parole causing him to spend more time in prison. Lastly, as to the third *Sandin* factor, whether the action imposed an atypical and significant hardship on the inmate in relation to the arbitrary conduct of DOC, Robertson argues that the combination of errors "in administrative segregation, adjudication[,] and appeals process manifested an a-typical [sic] and significant hardship." (Robertson's Br. at J.)

In further support of the third factor, he argues that DOC's conduct was "unusual" because he was the chairman of the alcohol and narcotics anonymous meetings, that he was appointed by the alcohol and drug treatment supervisor as the facilitator of the self-management and recovery training (S.M.A.R.T.) program, that until the incident he maintained a zero misconduct record, and that prior to the incident he was granted the privilege of parole. Based on this, he argues that it was questionable for DOC to punish him for an offense that he, in all probability, did not commit. He argues that DOC's conduct in violating 17 of its policies is beyond atypical or unusual and is ludicrous. He maintains that he was required to have a pre-deprivation hearing, as well as periodic review of his confinement. Specifically, under DC-ADM 802, he argues that he was supposed to have a placement review completed within 72 hours.

8

Turning to the word "significant" as used in the third factor of the *Sandin* test, Robertson argues that there is "no greater" significance than to be placed in the RHU after suffering an adverse medical event. He points to section 95.104(B)(i) of the Pennsylvania Code, 37 Pa. Code §95.104(B)(i),[6] and argues that unless there is a need for control, or there is a threat of harm to others or himself, placement in RHU is not appropriate.

Furthermore, he argues that the basis of a liberty interest is found where state policy, regulations, laws, or constitutions establish rules that limit the discretion of officials, and that the individuals have a liberty interest in having these policies, regulations, laws, or constitutions followed. As to the specific policies violated, Robertson points to DC-ADM 801 and DC-ADM 802, which require pre-confinement notice. Here, Robertson appears to turn from the misconduct, and addresses the time that he was housed in the RHU. He maintains that it was wrong to place him in the RHU without prior notice and an opportunity to be heard. He argues that his hearing was continued and he was not given permission to attend, and this constituted a violation of DC-ADM 802, which requires a hearing to be postponed until the inmate is able to participate. Robertson maintains that his hearing was deliberately continued without his attendance to disallow evidence of the drug tests that were taken at the hospital, all of which returned negative for drugs.

## Discussion

This Court has stated that

> [i]n ruling on preliminary objections, this Court accepts as
> true all well-pled allegations of material fact, as well as all

---

[6] This section of the Pennsylvania Code appears to be incorrectly cited, is no longer effective, or was never promulgated as a regulation.

9

inferences reasonably deducible from those facts. *Key v. [Pennsylvania Department of Corrections]*, 185 A.3d 421 (Pa. Cmwlth. 2018.) However, this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. *Id.* For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. *Id.* Any doubt must be resolved in favor of the non-moving party. *Id.*

*Feliciano v. Pennsylvania Department of Corrections*, 250 A.3d 1269, 1274 (Pa. Cmwlth. 2021).

## A. Whether this Court has Jurisdiction to Review Robertson's Finding of Misconduct?

Originally, Robertson attempted to bring his claims in our appellate jurisdiction. Although we are not addressing his claims in such a context, we note that "[i]t is well settled that '[i]nmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review.'" *Feliciano*, 250 A.3d at 1274 (quoting *Hill v. Department of Corrections*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013)).

Generally, DOC decisions regarding inmate misconduct convictions fall outside the scope of this Court's original jurisdiction, even where constitutional rights have allegedly been violated. *Feliciano*, 250 A.3d at 1274. This is because "[p]rison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens[,] *Bronson v.* [*Central Office Review Committee*], 721 A.2d 357, 359 (Pa. 1998)[, and] incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. *Robson v. Biester*, . . . 420 A.2d 9, 13 ([Pa. Cmwlth.] 1980)." *Id.* Therefore, under *Bronson*, "[u]nless an inmate can identify a personal or property interest . . . not limited by [DOC] regulations and which has been affected by a final

10

decision of [DOC] the decision is not an adjudication subject to the court's review." 721 A.2d at 359.

Here, Robertson asks this Court to consider the finding of misconduct by the hearing examiner and to look to other evidence in order to reverse the hearing examiner's finding. Thus, to the extent that Robertson challenges the hearing officer's finding of misconduct, we are without jurisdiction to consider that finding because misconduct appeals are a matter of internal prison administration. We consistently reach this conclusion. *See Dunbar v. Wetzel* (Pa. Cmwlth., No. 74 M.D. 2019, filed January 21, 2020) (unreported)[7] (concluding that this Court did not have jurisdiction to consider an inmate's challenge to a hearing examiner's finding of misconduct, because such matters concern internal prison administration.) Thus, any claim made by Robertson as to the finding of misconduct against him is dismissed with prejudice.

Robertson argues that he has a valid liberty interest in the loss of his parole due to the misconduct. This Court long ago decided that

> [p]arole is nothing more than a possibility, and, when granted, it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law abiding citizen in society. *Ughbanks v. Armstrong*, 208 U.S. 481, . . . (1908); *Keastead v. [Pennsylvania] Board of Probation and Parole*, . . . 514 A.2d 265 ([Pa. Cmwlth.] 1986). Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole. *Id.; see also Krantz v. [Pennsylvania] Board of Probation and Parole*, . . . 483 A.2d 1044 ([Pa. Cmwlth.] 1984). In other words, in Pennsylvania, a prisoner has no constitutionally protected liberty interest in being released from confinement

---

[7] *Dunbar* is an unreported opinion. Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

11

prior to the expiration of his or her maximum term. *Tubbs v. [Pennsylvania] Board of Probation and Parole*, . . . 620 A.2d 584 ([Pa. Cmwlth.] 1993), *petition for allowance of appeal denied*, . . . 637 A.2d 295 ([Pa.] 1993).

*Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997). This doctrine remains consistent. *See Myers v. Ridge*, 712 A.2d 791 (Pa. Cmwlth. 1998); *Hill v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 1136 C.D. 2018, filed November 14, 2019) (unreported). Accordingly, any claim made by Robertson as to his interest in parole is dismissed with prejudice.

As for any remaining claims, Robertson appears to argue that these claims are permissible under *Sandin*. However, Robertson's arguments in this respect are confusing, and he appears to conflate the issues of his parole not being granted, being placed in the RHU, and DOC not following its policies in adjudicating his misconduct together in a splintered analysis. We have attempted to the best of our ability to fairly address these arguments. As best as this Court can understand, in his PFR and subsequent brief in opposition to DOC's POs, Robertson alleges that his due process rights were violated because he was placed in the RHU contrary to DOC policy and that DOC violated these rights by failing to follow its *own policy* in the course of pursuing a misconduct against him *i.e.*, not hearing the evidence he wished to present, and by failing to give adequate notice and failing to hold a timely hearing.

In *Feliciano*, this Court re-examined how inmates in Pennsylvania establish a liberty interest under *Sandin*. We explained that in the context of prison disciplinary proceedings, there are three components at a minimum that must be present to satisfy an inmate's due process rights. These components are:

> [A]dvance written notice of the claimed violation[;] a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken[;] . . . [and

12

> the ability] to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

*Feliciano*, 250 A.3d at 1275 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974)). We explained, however, that we must first examine whether the inmate is even entitled to procedural due process under the circumstances of his case. This Court stated:

> Procedural due process rights are triggered by deprivation of a legally cognizable liberty interest. For a prisoner, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, [515 U.S. at 484]. Lesser restraints on a prisoner's freedom are deemed to fall "within the expected perimeters of the sentence imposed by a court of law." *Id.* If a prisoner ha[s] no protected liberty interest in remaining free of disciplinary custody, then the state owes him no process before placing him in disciplinary confinement.

*Feliciano*, 250 A.3d at 1275-76 (quoting *Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Cmwlth. 2003)). In reviewing our precedent interpreting and applying *Sandin*, this Court concluded that our application of *Sandin* was inconsistent, and, thus, we adopted the test created by the United States Court of Appeals for the District of Columbia Circuit as articulated in *Aref v. Lynch*, 833 F.3d 242, 253 (D.C. Cir. 2016). In adopting the *Aref* test, this Court held:

> [T]he proper methodology for evaluating [procedural due process] deprivation claims under *Sandin* is to consider (i) the conditions of confinement relative to administrative segregation, (ii) the duration of that confinement generally, and (iii) the duration relative to length of administrative segregation routinely imposed on prisoners serving similar sentences. We also emphasize that a liberty interest can

13

potentially arise under less-severe conditions when the deprivation is prolonged or indefinite.

*Feliciano*, 250 A.3d at 1279 (quoting *Aref*, 833 F.3d at 253). Based on the foregoing, we held that the inmate failed to state that his punishment of 30 days in disciplinary custody for failing a drug test constituted an atypical and significant hardship and that he did not offer any averment that would allow this Court to reach such a conclusion. *Feliciano*, 250 A.3d at 1279. Thus, we concluded that we did not have original jurisdiction over the matter and dismissed it without prejudice. However, we allowed the inmate to amend his petition for review in light of our decision in *Feliciano* because of the "clear guidance regarding the necessary components of a legally viable procedural due process claim in the context of internal prison matters." 250 A.3d 1279-80.

By *Feliciano's* standard, we do not have original jurisdiction over this matter. Although Robertson pleaded that he was held in administrative segregation for at least 14 days, he has not pleaded a specific time period that he was held in segregation. He has not pleaded facts as to the conditions of his confinement relative to administrative segregation. He has not pleaded any fact that would aid this Court in evaluating the length of his administrative segregation compared to lengths of segregation routinely imposed on prisoners serving similar sentences. Simply stated, Robertson has failed to plead facts sufficient to establish jurisdiction under *Feliciano* due to his placement in the RHU generally, the alleged untimeliness of his hearing,[8]

---

[8] To the extent Robertson argues he was not given notice about the hearing, we note that he was given timely notice. "[D]ue process in a misconduct proceeding is satisfied if an inmate receives written notice of the charges at least 24 hours before the hearing, receives a written statement of facts by the fact finder as to the evidence relied upon and reasons for the action taken." *Henderson v. Wood* (Pa. Cmwlth., No. 700 C.D. 2009, filed July 17, 2009). He was given notice of the charges and **(Footnote continued on next page…)**

14

and his placement in the RHU related to DOC not allowing him to present evidence at his misconduct hearing.[9]   Therefore, we must agree with DOC that we do not have jurisdiction over this claim.

However, Robertson did not have the benefit of *Feliciano's* guidance at the time his PFR was filed.  This is clearly evident as the requirements to prove an atypical and significant hardship as articulated by Robertson vary greatly from the requirements articulated in *Feliciano*.   Thus, we dismiss this *narrow* portion of Robertson's PFR *without* prejudice.[10]

 

 

_____

PATRICIA A. McCULLOUGH, Judge

---

hearing on January 27, 2020, which stated that a formal hearing would be held on or after January 29, 2020.  Thus, he had more than 24 hours of notice.

[9] Prior to *Feliciano*, we held that an inmate who was given 30 days of cell restriction and 30 days in the RHU, had not stated a liberty interest under *Sandin* even though he was not permitted to present evidence at his misconduct hearing.  *See Horan v. Newingham* (Pa. Cmwlth., No. 2622 C.D. 2015, filed October 24, 2016) (unreported).

[10] A dismissal without prejudice permits a petitioner to file a new petition for review.  *See In re Condemnation by Mercer Area School District* (Pa. Cmwlth., No. 2269 C.D. 2012, filed March 17, 2014) (unpublished), slip op. at 6 (stating that when a court dismisses an action or claim "without prejudice," a party is permitted to file a second action) (citing Restatement (Second) of Judgments §26(1)(b) *Cmt.*, (1982); *Robinson v. Trenton Dressed Poultry Company*, 496 A.2d 1240, 1243 (Pa. Super. 1985); *Venuto v. Witco Corp.*, 117 F.3d 754, 758-59 (3d Cir. 1997)).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell W. Robertson,                    :
                    Petitioner           :
                                         :    No. 525 M.D. 2020
          v.                             :
                                         :
PA. Dept. of Corrections,                :
                    Respondent           :

## *ORDER*

AND NOW, this 29th day of December, 2021, it is hereby ORDERED that Respondent Pennsylvania Department of Corrections' (DOC) preliminary objection to our jurisdiction over Petitioner Russell W. Robertson's (Petitioner) Petition for Review as it pertains to this Court's ability to review an internal misconduct finding is SUSTAINED, and this claim is DISMISSED WITH PREJUDICE. DOC's preliminary objection as it pertains to Petitioner's lack of a liberty interest in ungranted parole is SUSTAINED, and this claim is DISMISSED WITH PREJUDICE. DOC's preliminary objection to our original jurisdiction over Petitioner's due process claims relating to his confinement in restricted housing is SUSTAINED, and Petitioner's due process claims are DISMISSED WITHOUT PREJUDICE.

                                         _____
                                         PATRICIA A. McCULLOUGH, Judge