**Dwayne HILL and Donna Hill, Petitioners**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 1, 2013.

Decided April 10, 2013.

Reargument Denied May 21, 2013.

Dwayne Hill and Donna Hill, pro se.

Jaime B. Boyd, Assistant Counsel, Mechanicsburg, for respondent.

OPINION PER CURIAM.

In this *Holloway* [1] assessment appeal, Dwayne Hill (Hill), a state prison inmate, and Donna Hill (Donna Hill), his wife, (collectively, Petitioners), petition for review of an order of the Secretary of the Department of Corrections (DOC) denying Hill's appeal of an assessment against his inmate account (Assessment Order). Petitioners, representing themselves, essentially contend that DOC improperly assessed Hill's inmate account because DOC did not have authority to draw on the account held by husband and wife without a court order, did not have jurisdiction to conduct an assessment hearing, denied them due process, and improperly relied upon unauthenticated hearsay evidence. Petitioners seek an order enjoining DOC from deducting funds from the account and directing DOC to refund any money it deducted.

---

**1.** *See Holloway v. Lehman,* 671 A.2d 1179 (Pa.Cmwlth.1996) (before an assessment of damages against an inmate's prison account can occur, the inmate must be provided with a hearing and adjudication that comports with Sections 504–507 of the Administrative Agency Law, 2 Pa.C.S. § 504–507).

Also before the Court is DOC's "Application For Summary Relief And/Or Motion To Quash Donna Hill As A Petitioner From This Matter For Lack Of Standing" (Motion to Quash). For the following reasons, we grant DOC's Motion to Quash and affirm the Assessment Order.

## I. Background

Hill is an inmate at SCI–Houtzdale. Hill set fire to his prison cell. DOC issued a misconduct report charging Hill with arson, destruction of property, refusal to obey an order, threatening an employee, and lying to an employee.

After a misconduct hearing, DOC found Hill guilty of all charges, sanctioned him to 180 days disciplinary custody, and directed the assessment of damages against his inmate account to reimburse the Commonwealth for property damaged in the fire, namely two sheets, one blanket and one mattress. The hearing examiner further directed the destruction of the damaged items.

From this decision, Hill petitioned for review to this Court. *Hill v. Dep't of Corr.* (Dkt. No. 2263 C.D.2011) (*Hill I* ). Therein, Hill argued he was denied a *Holloway* hearing to challenge the propriety of the assessment. In response, DOC filed a Suggestion of Mootness, informing this Court that DOC scheduled an assessment hearing. By order dated January 25, 2012, we dismissed Hill's petition without prejudice to file a petition for review once he exhausted his administrative remedies. *Id.*

DOC then issued Hill a notice of assessment hearing to determine the amount of an assessment, if any, against his prison account for costs stemming from the misconduct. In February, 2012, a DOC hearing examiner held a *Holloway* hearing.

At the hearing, Margaret Baugman, DOC's business manager at SCI–Houtzdale (Manager), represented DOC. Hill represented himself. The hearing examiner entered into evidence the notice of hearing, the misconduct report, and the disciplinary hearing report. Manager offered into evidence an invoice from Pennsylvania Industries for the Blind and Handicapped (PIBH) indicating the price for a blanket is $12.78, and two invoices from the Pennsylvania Bureau of Correctional Industries (Correctional Industries) indicating the price for a flat sheet is $8.50, and the price for a mattress is $137.00. Manager also presented a memo stating the total amount of damages for the destroyed property is $166.78. The hearing examiner admitted the invoices and memo without objection. Manager testified the invoices are created by PIBH and Correctional Industries and reflect the prices for standard issue items.

Hill challenged Manager's testimony and evidence on several grounds. Hill argued he was denied a reasonable examination of the evidence to ascertain the number and nature of the items and the extent of damage. Hill asserted DOC improperly charged him for the destruction of two blankets but only sanctioned him for the cost of only one and did not specify whether the blanket was cotton or wool. Hill also challenged the arbitrary nature of mattress prices and attempted to present evidence regarding costs imposed on other inmates. Hill objected to DOC's authority to make deductions from his inmate account without a valid court order. Hill asserted bias on the part of the hearing examiner and questioned his authority to act as arbitrator.

The hearing examiner upheld the assessment. Hill filed exceptions to the hearing examiner's report, which the Secretary of DOC denied. Petitioners peti-

tioned for review.[2] DOC filed the Motion to Quash to dismiss Donna Hill as a petitioner.

## II. Standing

As a threshold matter, DOC contends Donna Hill lacks standing to appeal DOC's Assessment Order. First and foremost, DOC asserts Donna Hill was not aggrieved by DOC's determination. DOC maintains Donna Hill has no proprietary interest in Hill's individual inmate account and, thus, no direct interest in DOC's Assessment Order. Second, Donna Hill was not involved at the administrative level; therefore, she waived any arguments she now seeks to raise.

Petitioners respond that Donna Hill, as Hill's wife, has a proprietary interest in the inmate account, and therefore, a direct interest in the adjudication. Petitioners claim the account is jointly held by them as tenants by the entirety. According to Petitioners, Donna Hill makes regular deposits into and receives funds from this account. DOC's assessment of the account will have a detrimental financial impact on her. Petitioners further aver Donna Hill did not participate in the administrative proceedings because DOC failed to provide her with notice and an opportunity to be heard.

 Pursuant to Section 702 of the Administrative Agency Law (Law), 2 Pa. C.S. § 702, any person "aggrieved" by a Commonwealth agency adjudication who has a "direct interest" in the adjudication shall have the right to appeal to a court vested with jurisdiction to hear such appeals. *See also* Pa.R.A.P. 501 (providing "any party aggrieved by an appealable order ... may appeal therefrom"). "A 'di-

rect' interest requires a showing that the matter complained of caused harm to the party's interest." *S. Whitehall Twp. Police Serv. v. S. Whitehall Twp.*, 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989). Whether a party has standing to appeal is determined on a case-by-case basis and, if a person is determined aggrieved, she has standing. *Robb v. Workers' Comp. Appeal Bd. (Dep't of Pub. Welfare)*, 718 A.2d 875 (Pa.Cmwlth.1998).

Pennsylvania inmates are afforded inmate personal accounts while incarcerated in state correctional facilities. *See* Section 3124 of the Prisons and Parole Code, 61 Pa.C.S. § 3124. The funds in an inmate account may be derived from various sources, including wages, gifts, and government benefits. *Danysh v. Dep't of Corr.*, 845 A.2d 260 (Pa.Cmwlth.2004), *aff'd*, 584 Pa. 122, 881 A.2d 1263 (2005); *see* Section 5904 of the Prisons and Parole Code, 61 Pa.C.S. § 5904 (DOC shall credit the inmate with wages for the time the inmate is actually engaged in work); Section 3124 of the Prisons and Parole Code, 61 Pa.C.S. § 3124 (same). "All sums credited to an inmate shall be for the benefit of the inmate and paid to the inmate on the inmate's discharge." Section 3125 of the Prisons and Parole Code, 61 Pa.C.S. § 3125.

 Section 5123 of the Crimes Code, 18 Pa.C.S. § 5123, provides (with emphasis added) a person may "deposit money with the superintendent, warden, or other authorized individual in charge of a State or county correctional institution for the *benefit and use of an inmate confined therein, which shall be credited to the inmate's account and expended in accordance with*

---

**2.** Our review of administrative agency decision is limited to determining whether the agency's necessary findings were supported by substantial evidence or whether the agency

erred as a matter of law or violated any constitutional rights. *Moss v. Dep't of Corr.*, 838 A.2d 32 (Pa.Cmwlth.2003).

*the rules and regulations of the institution.*" DOC treats any deposits by family members and friends as gifts to the inmate. *See Danysh;* Handbook for the Families and Friends of Pennsylvania Department of Corrections Prison Inmates (Nov.2006) at 36.[3]

Significantly, only the inmate and DOC can draw from the account. *See* Section 9728 of the Sentencing Code, 42 Pa.C.S. § 9728 (providing DOC is authorized to make deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation or costs); Section 5904(c)(1) of the Prisons and Parole Code (DOC may deduct from an inmate's institutional account the amount of any judgment, court-ordered costs or assessments against the inmate); Section 3125 of the Prisons and Parole Code, 61 Pa.C.S. § 3125 (an inmate, subject to DOC's rules and regulations, may draw upon the balance of his inmate account for present needs). An inmate may send money from the account to his spouse or other family members. Inmate Handbook (2009 ed.) at 2. However, there is no statutory or regulatory authority for a spouse or other family member to withdraw funds from the inmate's account.

■ Contrary to Petitioners' assertions, these accounts are not "joint accounts" or "tenancies by the entirety"[4] for inmates and their spouses; rather, they are individual, personal accounts of the inmates. *See* Section 9728 of the Sentencing Code, 42 Pa.C.S. § 9728 ("inmate personal accounts"). DOC created Hill's inmate account as an individual, personal account for the sole benefit Hill, not as a joint account for Hill and his wife. *See* 61 Pa.C.S. § 3125. Based on the statutory and regulatory authority, there is no merit in Petitioners' position.

■ Moreover, Petitioners' position finds no support in common law. Both an estate by the entireties and a joint tenancy consist of at least the unities of time, title, possession and interest. *Frederick v. Southwick,* 165 Pa.Super. 78, 67 A.2d 802 (1949) (tenancy by the entireties); *Fenderson v. Fenderson,* 454 Pa.Super. 412, 685 A.2d 600 (1996) (joint tenancy). "Unity of time" requires that the tenants' interests vest at the same time. *Fenderson.* "Unity of title" requires the tenants to have obtained their title by the same instrument. *Id.* Petitioners do not offer an instrument naming both of them as obtaining rights simultaneously in Hill's inmate account. Therefore, they cannot prevail on this issue under common law.

Petitioners' assertion that Donna Hill has a proprietary interest in the account because she regularly makes deposits into and receives funds from this account is misleading. Donna Hill is not authorized to make any withdrawals from the account. Any deposits she makes to the account constitute gifts to Hill. DOC is authorized to make deductions from all money in an inmate's account, regardless of whether the source was the inmate's earned income or gifts from friends or family. *Danysh.*

3. We take judicial notice of DOC's policies and handbooks, which appear on DOC's official website at: http://www.cor.state.pa.us/portal/server.pt/community/department_of_corrections/4604. *See Figueroa v. Pennsylvania Board of Probation and Parole,* 900 A.2d 949 (Pa.Cmwlth.2006) (taking judicial notice of information found on DOC website).

4. A tenancy by the entireties is a form of co-ownership of real or personal property by husband and wife, by which together they hold title to the whole and right of survivorship, so that, upon death of either, the other takes whole to the exclusion of the deceased's heirs. *Johnson v. Johnson,* 908 A.2d 290 (Pa.Super.2006).

Because Donna Hill does not have an immediate,[5] joint proprietary interest in Hill's personal inmate account, she is not aggrieved by DOC's Assessment Order. Therefore, she lacks standing to participate in this action. Accordingly, we grant DOC's Motion to Quash, and we dismiss Donna Hill as a petitioner in this action.

### III. Issues

We turn now to the merits of Hill's Petition. Hill essentially raises three issues for our review. First, Hill contends this Court erred by dismissing his petition in *Hill I,* and DOC lacked jurisdiction to schedule a *Holloway* hearing when the matter was still pending before this Court. Second, Hill argues he was denied due process because he was not permitted to inspect the damaged items to ascertain the number and nature of the items damaged and the extent of damage sustained. He also claims he was denied due process because the hearing examiner precluded him from cross-examining Manager and presenting evidence. Third, Hill contends the invoices offered in support of the assessment are unauthenticated hearsay, which cannot support the assessment as a matter of law.

### A. *Hill I*

First, Hill claims this Court erred by dismissing his petition in *Hill I.* Hill asserts DOC did not serve him with a copy of the Suggestion of Mootness in *Hill I.* Hill further argues his appeal in *Hill I* divested DOC of jurisdiction. Thus, DOC had no jurisdiction to schedule a *Holloway* hearing while the matter was still pending before this Court.

Our order in *Hill I* was final and appealable. *See* Pa.R.A.P. 1112(b). Although Hill moved to vacate our order, his motion was denied. Hill did not file a petition for allowance of appeal with the Pennsylvania Supreme Court pursuant to Pa.R.A.P. 1112. Having failed to exercise his right to appeal, Hill is now precluded from challenging the propriety of the Court's order now. *See Lizzi v. Unemployment Comp. Bd. of Review,* 466 Pa. 450, 353 A.2d 440 (1976) (providing one who allows his statutory appeal rights to expire cannot at a later date successfully claim those appeal rights under guise of a petition for writ of mandamus). Thus, Hill cannot revive his lapsed rights in this separate action. *See id.*

Moreover, even if this Court were to consider Hill's argument regarding the alleged non-service of the Suggestion of Mootness, Hill has not been prejudiced in any way. Hill received the relief he requested—an assessment hearing. Thus, these issues lack merit.

### B. Due Process

Next, Hill contends the assessment hearing violated his due process rights. Hill maintains that, because this Court dismissed his petition in *Hill I,* his challenges to the underlying misconduct hearing were never addressed. Hill argues the DOC hearing examiners in both the misconduct hearing and the assessment hearing denied him the opportunity to inspect the damaged items to determine the number and nature of the items damaged and the extent of damage sustained. Hill claims it is now impossible to connect the invoices with the destroyed evidence. For

---

**5.** Even if Donna Hill was able to demonstrate an interest in the account under marital property law, any alleged claim to her husband's personal account would arise if the marriage is dissolved. *See* Section 3502 of the Divorce Code, 23 Pa.C.S. § 3502 (regarding equitable division of marital property upon divorce or annulment). Such speculative future interest is too remote to confer "aggrieved status" in this proceeding.

instance, DOC charged Hill with the destruction of two blankets but sanctioned him for only one. Neither the misconduct report nor disciplinary hearing report describe whether the blanket was cotton or wool. Hill further asserts the hearing examiner improperly precluded him from cross-examining Manager and from submitting evidence regarding mattress costs. Hill claims DOC was not authorized to draw money from his account without his consent.

 Initially, this Court does not possess original or appellate jurisdiction over DOC's decisions concerning charges of misconduct against an inmate. *Bronson v. Central Office Review Comm.,* 554 Pa. 317, 721 A.2d 357 (1998); *Brown v. Pa. Dep't of Corr.,* 913 A.2d 301 (Pa.Cmwlth. 2006). Inmate misconducts are a matter of internal prison management and, thus, do not constitute adjudications subject to appellate review. *Brown; Ricketts v. Central Office Review Comm. of the Department of Corrections,* 125 Pa.Cmwlth. 670, 557 A.2d 1180 (1989).

 There is a narrow exception if an inmate can identify a personal or property interest not limited by DOC regulations and affected by a final DOC decision. *Bronson.* If one of these interests is involved, the inmate is entitled to notice and an opportunity to be heard. *Id.* A DOC decision to assess an inmate's account qualifies as such an exception and is subject to judicial review. *Holloway v. Lehman,* 671 A.2d 1179 (Pa.Cmwlth.1996). Thus, although the courts will not review the underlying misconduct, the courts will review the imposition of an assessment. *Id.*

When an assessment is involved, the inmate is entitled, after reasonable notice, to a hearing. Section 504 of the Law, 2 Pa.C.S. § 504; *Holloway.* The inmate must be afforded an opportunity to be heard, all testimony must be recorded, and a full and complete record of the proceedings kept. *Id.* Reasonable examination and cross-examination must be permitted. Section 505 of the Law, 2 Pa.C.S. § 505; *Holloway.* The adjudication must be reduced to a written decision that includes findings of fact and reasons for the decision. Section 507 of the Law, 2 Pa.C.S. § 507; *Holloway.*

Here, Hill had two hearings. The misconduct hearing determined his liability for the destruction of property. The *Holloway* hearing determined damages for the value of the destroyed property as a result of the misconduct.

 Regarding the *Holloway* hearing itself, Hill received reasonable notice. The hearing examiner provided Hill an opportunity to be heard and to ask questions regarding the amount of the assessment. Manager, the person responsible for the assessment, testified. Contrary to Hill's assertions, the hearing examiner provided Hill with the opportunity to cross-examine Manager, which he fully exercised. *See* Notes of Testimony, 2/8/12, (N.T.) at 10, 16–19, 25.

The hearing examiner also provided Hill with the opportunity to present his argument and relevant evidence before the conclusion of the hearing. The hearing testimony was transcribed. The hearing examiner entered a written adjudication, which included his findings and reasoning, and provided the same to Hill. This procedure satisfies due process requirements. *Moss v. Dep't of Corr.,* 838 A.2d 32 (Pa. Cmwlth.2003).

 The hearing examiner entered a copy of the disciplinary hearing report into the record. *See* Certified Record (C.R.), Item No. 5, Hearing Exam'r Ex. No. 3. Therein, the hearing examiner found that

Hill set his cell on fire and, in the process, destroyed Commonwealth property, namely, two sheets, one blanket and one mattress. Because these findings were made in the misconduct proceeding, these findings are not subject to review. Hill cannot challenge these findings or the extent of the damage in this assessment appeal. *See Moss* (providing the only issue in a *Holloway* hearing is the amount of the assessment).

Moreover, Hill's claim regarding the number of blankets destroyed is specious. Although DOC *charged* Hill with the destruction of two blankets, the record shows DOC *sanctioned* him for the destruction of one blanket, not two. The hearing examiner noted that the conflict between the charge and sanction worked in Hill's favor, because DOC assessed him for the cost of only one blanket. N.T. at 14. The hearing examiner's resolution of this conflict is in accord with DOC's policy, which provides that DOC furnishes one blanket per inmate; DOC furnishes an extra blanket only where medically needed. DOC Policy DC–ADM 815. We reiterate Hill cannot challenge DOC's determination that he damaged one blanket because that relates to the underlying sanction in the misconduct proceeding, which is not subject to our review. The only issue before us is the value of the property damaged by his misconduct. *See Moss*.

■■■ To that end, Hill claims the amount assessed for the blanket is erroneous because the misconduct and disciplinary hearing reports do not clearly identify whether the blanket was cotton or wool. Manager testified DOC charged Hill for the cost of a cotton blanket. She presented evidence on the price of a standard issue, cotton thermal blanket, measuring 66″ × 90″. She testified that a wool blanket would cost much more than cotton. N.T. at 17. As discussed above, DOC's policy allows for one blanket per inmate. DOC Policy DC–ADM 815. According to the invoice and Manager's testimony, SCI–Houtzdale furnishes inmates with cotton blankets. Thus, the assessment is supported by substantial evidence. Even assuming DOC erred by not identifying the fabric of the blanket in its reports, such error is harmless for assessment purposes because DOC assessed Hill the lesser value.

Hill also contends he was denied due process because the hearing examiner precluded him from submitting evidence on the arbitrary costs of mattresses. According to Hill, his evidence would show DOC charged two other inmates different amounts in the past to replace this same item. Specifically, Hill claims DOC charged one inmate $173 for a mattress and charged another $172. N.T. at 21.

■■■ The hearing examiner excluded the evidence on the grounds of relevance. *Id.* at 23. The hearing examiner explained such evidence concerns the misconduct and assessment of other inmates, which is a completely separate issue and not relevant to this proceeding. *Id.* at 22. We conclude the hearing examiner did not err or abuse his discretion in excluding this evidence. Moreover, even if this alleged evidence was admitted, it would merely demonstrate that DOC charged Hill *less* for the destruction of his mattress than the other two inmates. Any potential assessment error is harmless because DOC assessed Hill the lesser value of $137 for the mattress.

■■■ Contrary to Hill's assertions, DOC is authorized to assess an inmate's account as a result of certain misconduct. *Jerry v. Dep't of Corr.*, 990 A.2d 112 (Pa.Cmwlth. 2010), *appeal denied,* 608 Pa. 649, 12 A.3d 372 (2011); *Brome v. Dep't of Corr.*, 756 A.2d 87 (Pa.Cmwlth.2000); *Anderson v. Horn*, 723 A.2d 254 (Pa.Cmwlth.1998); 37

Pa.Code § 93.10(a)(2)(iii). DOC can assess inmates found guilty of a Class I misconduct (a class that includes arson, destruction of property, refusal to obey an order, threatening an employee, and lying to an employee) [6] payment for the value of the destroyed or lost property or for expenses incurred as a result of the misconduct. Id. DOC may make deductions from all money in an inmate's account, regardless of whether the source was the inmate's earned income or gifts from family or friends. *Danysh.*

### C. Hearsay

Lastly, Hill argues the hearing examiner erred by admitting the invoices into evidence. Hill relies on *Speight v. Department of Corrections,* 989 A.2d 77 (Pa. Cmwlth.2010), in support of his position that the invoices are unauthenticated hearsay.

■■■■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa. R.E. 801(c). Hearsay evidence, which is properly objected to, is not competent to support a finding. *Lee v. Pa. Bd. of Prob. & Parole,* 885 A.2d 634 (Pa. Cmwlth.2005) (citing *Walker v. Unemployment Comp. Bd. of Review,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976)). Hearsay evidence that is admitted without objection, however, is to be given its natural probative effect and may support a finding if it is corroborated by any other competent evidence. *Id.*

A business record is an exception to hearsay. *See* Pa. R.E. 803(6). Rule 803(6) provides:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the sources of information or other circumstances indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

*Id.* The official comment to Rule 803 provides that the burden is on an *opposing* party to show that the sources of information or other circumstances indicate that a business record is untrustworthy, and thus does not qualify for exception to the hearsay rule. *See id.*

In *Speight,* the inmate pled guilty to misconduct, which included possession or use of a dangerous or controlled substance. The hearing examiner ordered the inmate's account assessed for all costs incurred by DOC due to his actions, including the hospital trip.

At the assessment hearing, DOC presented three medical bills totaling $5,979.85. DOC's accountant testified one bill was for the ambulance and the other two were from the hospital for various lab charges and the ICU. The bills were not authenticated by sworn affidavit of the record keeper for the ambulance company or the hospital, nor did any witnesses appear on their behalf. The inmate did not object to the admission of the medical bills. Based on this evidence, the hearing exam-

---

6. Inmate Handbook (2009 ed.) at 36–37.

iner assessed the inmate's account $5,979.85.

On appeal, we concluded the bills constituted hearsay and were not corroborated by any competent evidence. The invoices were from an outside hospital and ambulance company regarding charges specific to the inmate's hospitalization. DOC's accountant merely reviewed each invoice and stated the amount set forth on the invoice. DOC's accountant was not the custodian of the documents and was not qualified to authenticate the documents.

DOC did not contend that the medical bills were business records. Instead, DOC argued the medical bills were properly admitted into evidence as unobjected-to hearsay. However, we held that corroboration of the unobjected-to document is required. *Id.* Without corroboration, the medical bills could not form the basis for a finding to support the hearing examiner's assessment. *Id.* Thus, we reversed.

 *Speight* is readily distinguishable from this case. Here, DOC submitted three invoices into evidence, which the hearing examiner admitted without objection. PIBH and Correctional Industries, which is a division of DOC, created the invoices. The PIBH invoice, dated April 27, 2010, shows SCI–Houtzdale ordered 150 blankets at a unit price of $12.78 per blanket. C.R., Item No. 5, Cmwlth. Ex. No. 2. The Correctional Industries invoice, dated November 2, 2004, shows the prison ordered 600 sheets at the individual unit price of $8.50. C.R., Item No. 5, Cmwlth. Ex. No. 3. A second Correctional Industries invoice, dated July 31, 2008, shows the prison ordered 100 mattresses at a unit price of $137. C.R., Item No. 5, Cmwlth. Ex. No. 4.

Unlike the medical bills involved in *Speight,* the invoices here qualify as business records. *See* Pa. R.E. 803(6). The

purchase of standard materials for Pennsylvania's prison population is a regularly conducted business activity. The invoices contain sufficient indicia of regularity and reliability, specifically, the letterhead of PIBH and Correction Industries, date, detailed information regarding the item description, quantity ordered, price, and name of the salesperson. C.R., Item No. 5, Cmwlth. Ex. Nos. 2–4.

Unlike the accountant in *Speight,* Manager is more than qualified to authenticate these invoices. *See* Pa. R.E. 902(11). Manager testified the prices listed on the invoices are established by PIBH and Correctional Industries and reflect the prices for standard issue items ordered and paid for by SCI–Houtzdale. "This is what we pay for standard issue when we order blankets, sheets, whatever." N.T. at 19. Although Manager did not create the invoices, as the business manager for SCI–Houtzdale, she was well aware of the prices charged and the amount paid by SCI–Houtzdale for standard items. *Id.* at 24.

Thus, the hearing examiner properly admitted the invoices as business records. The invoices constitute substantial evidence to support DOC's assessment of $166.78 against Hill's inmate account.

For these reasons, we affirm.

### *ORDER*

**AND NOW,** this 10th day of April, 2013, we **GRANT** the Motion to Quash and **AFFIRM** the order of the Department of Corrections.