# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lance Tyler, : 
                  Petitioner : 
                : 
        v. : No. 302 M.D. 2021 
             : Submitted: June 17, 2022 
Department of Corrections, : 
            Respondent : 

**BEFORE:    HONORABLE RENÉE COHN JUBELIRER,** President Judge 
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge 
                 **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY** 
**PRESIDENT JUDGE COHN JUBELIRER     FILED: June 8, 2023**

Before this Court is the preliminary objection in the nature of a demurrer (PO or demurrer) filed by the Department of Corrections (Department) in response to the pro se Petition for Review (Petition) filed by Lance Tyler (Petitioner), an inmate at the State Correctional Institution (SCI) at Benner Township (SCI-Benner). In the Petition, Petitioner asks this Court for a writ of mandamus directing the Department to comply with the misconduct hearing procedures set forth in Department's Inmate Misconduct Policy DC-ADM 801 (DC-ADM 801 or Policy) and regulation at 37 Pa. Code § 93.10(b)(1)-(6).[1] The Department asserts the Petition should be dismissed

---

[1] This regulation states, in relevant part:

§ 93.10 Inmate Discipline

. . . .

**(Footnote continued on next page…)**

because Petitioner has failed to state a claim for mandamus relief. Specifically, the Department argues Petitioner has not established a clear right to relief because DC-ADM 801 and the regulation do not create any enforceable rights and Petitioner received all of the process constitutionally due. Based upon precedent, we must sustain the demurrer and dismiss the Petition.

## I. THE PETITION

On September 3, 2021, Petitioner filed the Petition in this Court's original jurisdiction asserting the following facts. Petitioner was issued a misconduct on May 24, 2021, for threatening an SCI employee with bodily harm due to Petitioner allegedly threatening to punch Corrections Officer in the face, and Petitioner was

---

(b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:

(1) Written notice of charges.

(2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by the Department in the *Department of Corrections Inmate Handbook*, or any Department document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801 . . . . The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the *Department of Corrections Inmate Handbook*.

37 Pa. Code § 93.10(b)(1)-(6).

placed in pre-hearing confinement. (Petition ¶¶ 4-5, Exhibit (Ex.) C.) Petitioner received notice of the misconduct/rule violation on May 27, 2021, after which he requested that videos of the alleged incident be viewed and Corrections Officer who issued the misconduct be called as a witness. (*Id.* ¶¶ 6-9.) A hearing examiner conducted a misconduct hearing on June 3, 2021, at which the hearing examiner indicated he viewed one of the videos, and Petitioner objected based on his desire to have Corrections Officer be called as a witness and another video be provided. (*Id.* ¶ 10.) The hearing examiner subsequently took Corrections Officer's testimony under oath on June 9, 2021, and resumed the misconduct hearing on June 10, 2021. (*Id.* ¶¶ 11-12.) At the resumed hearing, the hearing examiner stated he believed Corrections Officer's written report over Petitioner's denial, found Petitioner guilty of the misconduct, and imposed a sanction. (*Id.* ¶¶ 12-13.) Petitioner, who did not have access to the DC-ADM 801 while in pre-hearing confinement, obtained the DC-ADM 801 during the appeal period, and asserted that multiple sections of the Policy were not followed prior to and during his misconduct hearing.[2] (*Id.* ¶¶ 15, 19, 21.)

---

[2] Specifically, Petitioner avers the following sections of the DC-ADM 801 were violated:

> 1.B.1 (stating that a DC-141, Part 1 Misconduct Report (DC-141, Part 1) is to be used to give notice of the misconduct and is evidence to be used against an inmate during a misconduct hearing);
> 1.D.1 (providing that, unless an inmate is in "POC" (a term not defined in the record, but appears to be a form of custody), the DC-141, Part 1 "shall be personally served" on the inmate the day it was written, and, if not, a Shift Commander is to determine why and provide a justification);
> 1.D.4 (stating that additional forms relating to an inmate's request for representation and witnesses, the inmate's version of the events, and witness statement to be delivered with DC-141, Part 1 and the procedures related to completing and submitting those forms);

**(Footnote continued on next page…)**

Petitioner followed through with each step of the appeals process. (*Id.* ¶¶ 14, 16-18, 20, 22; Ex. D.) SCI-Benner's Program Review Committee (PRC) reviewed Petitioner's appeal and upheld the hearing examiner's decision, finding the hearing examiner had adequately documented his findings of facts and those findings support the determination. (Petition Ex. D.) SCI-Benner's Superintendent considered Petitioner's appeal from the PRC decision and, upon his review, upheld the PRC's and hearing examiner's determination. (*Id.*) Finally, the Department's Office of Chief Hearing Examiner likewise upheld the hearing examiner's decision and subsequent appeal decisions based on its review of the entire record. (*Id.*) Thus, Petitioner exhausted the appeals process.

Petitioner argues he has a clear right to relief to a formal misconduct hearing that complies with the policies set forth in the DC-ADM 801 and the regulation at

3.A.1 (providing that the "Hearing Examiner shall conduct the misconduct hearing");

3.A.12 (stating the hearing examiner is to ensure that "complete records of all proceedings are maintained for a period of two years in the Hearing Examiner's Office[]");

3.B.4 (providing that an inmate should be permitted to meet with an assistant before a hearing);

3.D.1 (stating the hearing examiner can approve the calling of a staff member or witness who has knowledge of the incident, is present on the facility's grounds, and whose testimony is needed to establish an inmate's guilt or innocence);

3.D.2(a)-(b) (providing for up to three witnesses to be requested and the procedures for making such request);

3.D.3 (stating the hearing examiner may question a witness and an inmate "shall be permitted a reasonable opportunity to pose relevant questions to any adverse witness," which can be controlled by the hearing examiner);

3.D.4 (indicating that the hearing examiner shall make credibility determinations); and

3.D.5 (providing that "[a]ll testimony shall be under oath").

(Petition ¶ 21; PO Ex. A; Petitioner's Response to PO Exs. A-C; and https://www.cor.pa.gov/ About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf (last visited June 7, 2023).)

4

37 Pa. Code § 93.10(b)(1)-(6), which set forth the process due to inmates in misconduct or disciplinary hearings. (*Id.* ¶¶ 23-24.) According to Petitioner, DC-ADM 801 imposes a duty on the Department to comply with the formal procedures set forth in that Policy and the regulation, and it has not done so in this matter. (*Id.* ¶¶ 25-26.) In particular, Petitioner claims the Department did not serve the misconduct report on the same day it was written and failed to provide him a reasonable opportunity to question Corrections Officer, an adverse witness. (*Id.* ¶ 27.) Finally, Petitioner asserts mandamus is appropriate because he lacks any other remedy that would compel the Department to conform to its own regulation. (*Id.* ¶¶ 28-29.) As relief, Petitioner asks the Court to direct the Department "to conduct his misconduct hearing in accord with [a]dministrative regulations . . . or other appropriate relief this Court deems necessary." (*Id.* ¶ 31.)

## II. PO AND RESPONSE

In its demurrer, the Department argues the Petition fails to establish the clear right to relief needed to obtain a writ of mandamus. To the extent Petitioner is seeking judicial review of the hearing examiner's misconduct finding in either the Court's original or appellate jurisdiction, the Department asserts Petitioner has no right to that relief because the results of disciplinary hearings are not subject to that review, absent a substantial constitutional issue, which is not present here. (PO ¶¶ 23-28; Department's Brief (Br.) at 8-9 (citing, *e.g.*, *Bronson v. Cen. Off. Rev. Comm.*, 721 A.2d 357 (Pa. 1998); *Edmunson v. Horn*, 694 A.2d 1179 (Pa. 1997); *Brown v. Pa. Dep't of Corr.*, 913 A.2d 301 (Pa. Cmwlth. 2006); *Iseley v. Beard*, 841 A.2d 168 (Pa. Cmwlth. 2004)).) According to the Department, Petitioner already received the formal disciplinary hearing he requests in the Petition and neither DC-ADM 801 nor 37 Pa. Code § 93.10(b)(1)-(6) create rights or constitutional interests

that trigger due process protections. (PO ¶¶ 29-31; Department's Br. at 9-10 (citing *Bronson v. Wetzel* (Pa. Cmwlth., No. 610 M.D. 2017, filed June 26, 2018), slip op. at 9[3]).) Thus, the Department contends Petitioner's claims are based upon a non-existent right. (PO ¶ 31.) The Department also argues Petitioner's own allegations reflect he received the process found to be due in prison disciplinary hearings, which is advance written notice, no less than 24 hours before the disciplinary hearing, a written statement by the factfinder reflecting the evidence relied upon, and an opportunity to call witnesses and present documentary evidence in defense. (PO ¶¶ 32-33, 47; Department's Br. at 10-12 (citing *Wolff v. McDonnell*, 418 U.S. 539, (1974); *Feliciano v. Pa. Dep't of Corr.*, 250 A.3d 1269, 1275 (Pa. Cmwlth. 2021)).) The Department observes *Wolff* specifically holds there is no constitutional right to confront or cross-examine adverse witnesses or for appointed counsel in disciplinary hearings, nor a right to call as many witnesses as an inmate chooses, and, therefore, Petitioner cannot prevail on these claims. (PO ¶¶ 40-41, 46, 48; Department's Br. at 12-13.) Having not established a clear right to relief to a writ of mandamus, the Department asserts the Petition must be dismissed.

Petitioner responds he is not challenging the misconduct decision but the Department's failure to comply with its own procedure before the decision was issued and, therefore, the Department's assertions that this Court lacks jurisdiction are misplaced. (Petitioner's Response to PO (Response) ¶¶ 10-14; Petitioner's Br. at 17.) Petitioner argues the Department is empowered to enact regulations, the regulation at 37 Pa. Code § 93.10(b) provides the written procedures for inmate discipline, and DC-ADM 801 states violations "**shall** be [] disposed of . . . by formal

---

[3] While not precedential, an unreported opinion of this Court may be cited as persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b)(1), Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

6

process," all of which reflect the Department's mandatory obligation to follow those procedures. (Response ¶¶ 2-4, 7-8 (citing Section 1.A.1 of the DC-ADM 801; *Hewitt v. Helms*, 459 U.S. 460 (1983)) (emphasis and alterations in original); Petitioner's Br. at 11-12.) As there is a mandatory obligation to provide a formal misconduct hearing, which Petitioner denies he received, Petitioner maintains mandamus will lie against the Department because it did not comply with that obligation. (Response ¶¶ 5-6; Petitioner's Br. at 16 (citing *Banks v. Dep't of Corr.*, 759 A.2d 432, 434 (Pa. Cmwlth. 2000)).)

Replying to the Department's arguments that he received all the process he was due, Petitioner asserts his arbitrary placement in pre-hearing confinement, which is not used routinely, affected his ability to present relevant evidence in his defense by his not receiving the notice of the misconduct and DC-ADM 801 until after his release or obtaining assistance from a staff member. (Response ¶¶ 17, 20, 22.) Petitioner maintains the Department has not provided justification for the delay in providing the notice of the misconduct. (*Id.* ¶¶ 19, 21.) He further contends he should have been present during Corrections Officer's testimony so he could have an opportunity to pose questions. (*Id.* ¶¶ 30-32; Petitioner's Br. at 13-16.) Petitioner disputes that *Wolff* supports the conclusion that he does not have a right to confront and cross-examine witnesses because there would be no undue risk to institutional safety or correctional goals and Section 93.10(b)(3) and (4) of the regulation and Section 3.A.12 of DC-ADM 801 allow for such questioning. (Response ¶¶ 23-24, 26, 29; Petitioner's Br. at 13-14, 18.) Alternatively, Petitioner asserts the hearing examiner's decision affected his personal rights and, therefore, it is an adjudication under the Administrative Agency Law (AAL), 2 Pa.C.S. §§ 501-588, which requires cross-examination, a full and complete record, that all testimony be recorded, and a

7

decision that contains reasons for the decision, which did not occur here. (Response ¶¶ 32-35.) For these reasons, Petitioner argues the demurrer should be overruled. (*Id.* ¶ 37.)

## III. DISCUSSION

"Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the [petitioner], a corresponding duty in the [respondent], and want of any other appropriate or adequate remedy." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1107-08 (Pa. 2007) (quotation omitted). Mandamus is not used to establish legal rights, but to enforce rights that are "already established beyond peradventure." *Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 72 (Pa. Cmwlth. 2007). Mandamus will not lie to "direct the exercise of judgment or discretion in a particular way, or to direct the retraction or reversal of an action already taken." *Chanceford Aviation Props.*, 923 A.2d at 1108. Mandamus may be used "to compel a tribunal or administrative agency to act when that tribunal or agency has been sitting on its hands." *Id.* (internal quotation marks omitted).

When ruling on preliminary objections in the nature of a demurrer, this Court must accept all well-pleaded factual allegations in the petition for review as true, along with any reasonable inferences deducible therefrom. *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). The Court is not bound, however, "by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* Preliminary objections should be sustained only where it "appear[s] with certainty that the law will not permit recovery and any doubt should be resolved by a refusal to sustain them." *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003).

8

The Department asserts multiple reasons why Petitioner has failed to establish a clear legal right to the relief he seeks, which is a formal disciplinary conduct hearing held in accordance with the procedures set forth in the Department's regulation and DC-ADM 801. Petitioner's mandamus claim would thereby be precluded as a matter of law. The Department first argues the Court lacks jurisdiction, either in our appellate or original jurisdiction, to review the merits of the hearing examiner's decision upholding the misconduct against Petitioner. The Department is correct that the Court lacks jurisdiction to review that determination. This Court does not have appellate jurisdiction over inmate misconduct determinations because they are matters of internal prison management and not "adjudications subject to appellate review." *Hill v. Dep't of Corr.*, 64 A.3d 1159, 1167 (Pa. Cmwlth. 2013).[4] Petitioner, however, is not seeking judicial review of the underlying misconduct determination and, therefore, does not invoke our appellate jurisdiction. And, while this Court may exercise original jurisdiction "if an inmate can identify a personal or property interest not limited by [Department] regulations and affected by a final [Department] decision" that violates an inmate's constitutional rights, *Feliciano*, 250 A.3d at 1275 (quoting *Hill*, 64 A.3d at 1167) (alterations in the original), Petitioner's claim is that the Department is not complying with the written procedures set forth in its regulations and DC-ADM 810. Such claims do not ask this Court to exercise its original jurisdiction over the actual misconduct determination itself. *Id.* at 1275 n.9. Accordingly, this is not a reason to dismiss the Petition.

---

[4] Because the hearing examiner's decisions are not "adjudications," *Hill*, 64 A.3d at 1167, Petitioner's arguments that the AAL's requirements for adjudications must be satisfied, and were not, necessarily fail.

The Department next argues Petitioner failed to establish a clear legal right based on rights he contends are established by DC-ADM 801 and the Department's regulation. Notably, Petitioner does not allege that the Policy or regulation violate any statutory or constitutional rights but asserts he has a clear right to the DC-ADM 801 and regulatory procedures provided. However, "[a]dministrative regulations are not statutes or constitutional provisions." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014). Thus, "allegations that the Department failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates." *Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017). *See also Tindell*, 87 A.3d at 1035. This is because they do not create enforceable rights in a state prison inmate. *Weaver v. Dep't of Corr.*, 829 A.2d 750 (Pa. Cmwlth. 2003). DC-ADM 801 specifically disclaims that it creates any rights in any person, DC-ADM 801 Section VI,[5] and similar language in other sections of the Department's policies has been found to be "sufficient to dispel any reasonable expectation that an enforceable right is created by the [Department's] policy." *Weaver*, 829 A.2d at 753. Therefore, no clear legal right to relief, or cause of action, can be based on a violation of the Department's policies or administrative regulations. *Feliciano*, 250 A.3d at 1275 n.9; *Tindell*, 87 A.3d at 1035; *Weaver*, 829 A.2d at 753.

Finally, the Department asserts Petitioner's allegations that he did not receive a proper misconduct hearing fail to state a claim because the Petition's averments reflect that the requirements of *Wolff* and *Feliciano* were met. Assuming that

---

[5] This section provides relevantly: "This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual." DC-ADM 801 § VI.

10

Petitioner has been deprived of a protected interest, which is when principles of due process are implicated, "[t]he amount of process due depends on the context presented." *Shore*, 168 A.3d at 383 (quoting *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999)). The Pennsylvania Supreme Court has held that, unlike criminal trials and related appeals, during which "a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions," "the procedures for pursuing . . . misconduct appeals are a matter of internal prison administration and the full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding." *Bronson*, 721 A.2d at 358-59 (internal quotation marks and citations omitted). In *Feliciano*, we explained the due process requirements for prison misconduct hearings set by the United States Supreme Court:

> In the context of prison disciplinary proceedings, three components, at minimum, must be present to satisfy an inmate's right to procedural due process:
>
>> [A]dvance written notice of the claimed violation[;] a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken[;] . . . [and the ability] to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.
>
> *Wolff* . . . , 418 U.S. [at] 563, 566 . . . .

250 A.3d at 1275 (sixth through eighth alterations added). The advance written notice must be at least 24 hours before the hearing. *Wolff*, 418 U.S. at 564. On the last point, the ability to call witnesses and present evidence, the United States Supreme Court held, in *Wolff*, that an inmate does not have "the unrestricted right to

11

call witnesses" and the "Constitution should not be read to impose the procedure" of requiring "confrontation and cross-examination of those furnishing evidence against the inmate." *Id.* at 566-67. *Wolff* further holds that inmates in disciplinary proceedings do not have a constitutional right to have either retained or appointed counsel, and assistance from others, such as "staff" or "a sufficiently competent inmate designated by the staff," is available where an inmate is illiterate or the issue is so complex that it is unlikely the inmate can "collect and present the evidence necessary for an adequate comprehension of the case." *Id.* at 569-70. Accordingly, both the United States Supreme Court and the Pennsylvania Supreme Court have set forth more limited due process requirements for prison disciplinary hearings than those available in other types of hearings or proceedings. We are bound by those determinations.

Here, Petitioner's averments reflect that he received written notice of the misconduct violation against him on May 27, 2021, and his misconduct hearing commenced on June 3, 2021. (Petition ¶¶ 6, 10.) As there were 7 days between Petitioner receiving written notice and the commencement of the misconduct hearing, which is more than the 24 hours required by *Wolff*, Petitioner has not stated a claim based on the alleged untimely notice of the misconduct.

Petitioner's allegations also indicate he requested the testimony of Corrections Officer, who issued the misconduct, and two videos which might show the incident be viewed. (*Id.* ¶¶ 7-9.) The hearing examiner viewed one of the videos several times, finding the second video was not needed to establish Petitioner's innocence or guilt, and took the testimony of Corrections Officer under oath, which was outside of Petitioner's presence. (*Id.* ¶¶ 10-11; Petition Exs. B-C.) The video the hearing examiner watched did not have audio and showed Petitioner "approach [a] desk and

12

look[] down at something," Corrections Officer looking at Petitioner as Petitioner approaches and says something, and Corrections Officer "turn[ing] and fac[ing Petitioner] at which point [Petitioner] turns and walks away." (Petition Ex. C.) The hearing examiner further recounted Corrections Officer's testimony, taken under oath, that Corrections Officer "de[fi]nitely heard [Petitioner] state [Petitioner] was going to punch me in the face as he approached the desk[,] . . . that [Corrections Officer] did turn to face [Petitioner] in order to be prepared in case [Petitioner] attempted anything[,] . . . [Corrections Officer] ordered [Petitioner] back to his cell[, and] . . . [Corrections Officer] was having on-going issues with [Petitioner]." (*Id.*) The hearing examiner resumed the hearing on June 10, 2021, and advised Petitioner of Corrections Officer's testimony and of the review of the video, to which Petitioner responded he was not guilty of the misconduct charge. (*Id.*) The hearing examiner then indicated he believed Corrections Officer's written report over Petitioner's denials, found Petitioner guilty, and imposed a sanction. (Petition ¶¶ 12-13.) These allegations, and the hearing examiner's decision, reflect the hearing examiner considered one of the videos and Corrections Officer's testimony and report, as requested by Petitioner, and denied the third piece of evidence as not being needed. While Petitioner understandably wanted to be present to hear Corrections Officer's testimony and to cross-examine Corrections Officer, and to watch the video with hearing examiner to explain, since there was no audio, this is not constitutionally required by *Wolff*, 418 U.S. at 567, and we are constrained by that pronouncement. Petitioner cites language in *Wolff* related to allowing witnesses to appear if there would be no undue risk to institutional safety or correctional goals. That language relates to calling witnesses, not cross-examining witnesses. Equally understandable is Petitioner's argument that he should have had assistance, but *Wolff* similarly holds

13

that no such assistance by either counsel or staff is constitutionally required, as there are no allegations that he is illiterate or that the issue was somewhat complex that staff assistance was needed. *Id.* at 569-70. We recognize it is difficult to understand how the ability to call a witness is given effect in this case, where the witness testifies outside the presence of the inmate, who cannot hear the testimony, and thus cannot respond to it or question it. We similarly recognize it is difficult to understand how the ability to present evidence is given effect when only one of two videos is reviewed, the video has no audio, and the inmate is not present during the viewing. What occurred here is troubling. However, this Court has no authority to require more. Accordingly, we are constrained to hold that Petitioner has not stated a claim on this basis.

Last, and for completeness, the hearing examiner issued a written decision explaining why he found Petitioner guilty of the misconduct. (Petition Ex. C.) Therein, as discussed above, the hearing examiner identified the evidence presented, including the video, which had no audio, Corrections Officer's testimony and report, and Petitioner's not guilty plea. The hearing examiner stated he credited Corrections Officer's written report regarding Petitioner's threatening him over Petitioner's denial, and a preponderance of the evidence supported the misconduct charge, Petitioner was guilty, and he would receive 30 days of disciplinary confinement and lose his job as punishment. This decision, which was upheld at all three levels of appellate review within SCI-Benner and the Department, reflects "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff*, 418 U.S. at 563, and, therefore, under our binding precedent, meets the constitutional requirements of due process thereby precluding a valid claim on this basis.

14

## IV.  CONCLUSION

Because DC-ADM 801 and the regulations do not create enforceable rights and Petitioner received the process our precedent has held due under *Wolff*, *Bronson*, and *Feliciano*, we must hold that Petitioner has not established the clear legal right to the relief requested needed to state a claim for a writ of mandamus.  Accordingly, it "appear[s] with certainty that the law will not permit recovery" on Petitioner's claims, *Neely*, 838 A.2d at 19 n.4, and, therefore, we are constrained to sustain the Department's demurrer and dismiss the Petition.

---

**RENÉE COHN JUBELIRER,** President Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Lance Tyler,                                    :
                    Petitioner               :
                               :
          v.                                       :    No. 302 M.D. 2021
                               :
Department of Corrections,                      :
                    Respondent              :

## O R D E R

**NOW**, June 8, 2023, the Preliminary Objection in the Nature of a Demurrer filed by the Department of Corrections is **SUSTAINED**, and the Petition for Review filed by Lance Tyler is **DISMISSED**.

                                           _____

                                         **RENÉE COHN JUBELIRER,** President Judge